1998-NMCA-047

957 P.2d 68

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Diane MARTINEZ, Defendant–Appellant.**

**No. 18763.**

Court of Appeals of New Mexico.

Jan. 22, 1998.

Certiorari Denied March 16, 1998.

Tom Udall, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellee.

---

Phyllis H. Subin, Chief Public Defender, Santa Fe, Samuel Z. Damon, Alamogordo, for Appellant.

*OPINION*

HARTZ, Chief Judge.

1. The question presented by this appeal is whether someone under no obligation to report to jail can be guilty of escape from jail. Our answer is no.

**BACKGROUND**

2. Defendant first raised the issue in a motion to dismiss after she was charged with escape from jail. At the district court hearing on the motion, she and the State stipulated to the following facts:

1. [Defendant] was committed to the Otero County Detention Center on the 24th day of October 1995 by Judge Barber, Alamogordo Municipal Court, to serve a term of one-hundred-seventy-nine (179) days.

2. [Defendant] was released from the jail to complete her sentence on electronic monitoring.

3. On March 11, 1996, John Whitely, Detention Services Manager, allocated [Defendant] time to be outside her home until 5 p.m. in order to appear in Municipal Court and to keep an appointment with Income Support Division.

4. [Defendant] did not return home at the appointed time.

5. Nor did [Defendant] report thereafter and was eventually arrested on a warrant.

Defendant argued that the stipulated facts could not sustain a conviction for escape from jail.

3. The district court denied the motion, and Defendant entered a no-contest plea, reserving the right to appeal the issue raised by her motion. *See State v. Hodge,* 118 N.M. 410, 416, 882 P.2d 1, 7 (1994) (discussing method of reserving issues in plea agreement). We issued a calendar notice proposing to reverse. *See* Rule 12–210(A), (D) NMRA 1998 (describing summary calendar procedures). The State has responded with a memorandum in opposition.

**DISCUSSION**

■ 4. "Escape from jail consists of any person who shall have been lawfully committed to any jail, escaping or attempting to escape from such jail." NMSA 1978, § 30–22–8 (1963). We have repeatedly held that a prisoner can violate the statute without breaking out from the confines of the jail itself. *See State v. Hill,* 117 N.M. 807, 877 P.2d 1110 (Ct.App.1994) (escape during furlough); *State v. Coleman,* 101 N.M. 252, 680 P.2d 633 (Ct.App.1984) (escape during work release for private employer); *State v. Gilman,* 97 N.M. 67, 636 P.2d 886 (Ct.App.1981) (escape while on prisoner work detail at county fairgrounds). But in each of these cases the defendant failed to return to jail when he was required to be there. As we noted in *Hill,* "the dispositive issue is whether Defendant was lawfully committed to jail and thereafter failed to return to jail, even though he was given permission to be outside its confines for a specific period of time." 117 N.M. at 808, 877 P.2d at 1111 (emphasis deleted).

■ 5. The present case is distinguishable from the above precedents because Defendant was under no obligation to report to jail at any future time. A recent decision by this Court assumed that failure to abide by the terms of a house arrest would not constitute the crime of escape. *State v. Fellhauer,* 1997–NMCA–064, ¶ 19, 123 N.M. 476, 943 P.2d 123. That assumption was correct. Section 30–22–8 requires that the offender have been "committed to any jail" and that the escape be "from such jail." It contains no reference to other forms of commitment. We fail to see how one can *escape* from jail when one is never obliged to *be* in jail. Penal statutes should not be construed contrary to their plain meaning. *See State v. Ruiz,* 109 N.M. 437, 438, 786 P.2d 51, 52 (Ct.App.1989).

■ 6. In its memorandum in opposition the State refers to decisions from other states upholding escape convictions under facts similar to those in this case. But those decisions rely on statutory language that is considerably more expansive than Section 30–22–8. *See State v. Williams,* 186 Ariz. 622, 925 P.2d 1073, 1074 (Ariz.Ct.App.1996) (escape occurs when the individual is in "cus-

tody," which is defined by statute to include "constructive restraint pursuant to … court order"); *People v. Sheets*, 223 Mich.App. 651, 567 N.W.2d 478, 482 (1997) (definitional section specifically includes electronic monitoring site); *State v. Long*, 82 Ohio App.3d 168, 611 N.E.2d 504 (1992) (escape from detention; statutory definition includes electronic monitoring in home); *State v. Parker*, 76 Wash.App. 747, 888 P.2d 167, 168 (1995) (escape statute refers to "detention facility"; "home detention" is defined to include confinement in private residence subject to electronic monitoring); *State v. Holliman*, 180 Wis.2d 348, 509 N.W.2d 73, 75 (Wis.Ct.App. 1993) (escape from "custody"; statute forbids "failure of a prisoner to remain within the extended limits of his or her confinement" and specifically contemplates community residential confinement).

7. The opinion most helpful to the State is *State v. Esmond*, 125 Or.App. 613, 866 P.2d 494 (1994). The defendant in that case had been placed on probation, subject to completing 90 days in the Benton County Community Correction home detention program. On the 53rd day of home detention the defendant left home without permission and then left town. He was convicted of escape from a correctional facility. The appeals court wrote:

> [The defendant] was booked into the Benton County Correctional Facility, given an alternate cell assignment and advised that departure from his residence without approval from his probation officer would constitute escape from custody. During the relevant 90–day period, he was in the constructive custody of the Benton County Correctional Facility[.]

*Id.*, 866 P.2d at 495. Relying on this language, one could argue that Defendant here was in the constructive custody of the jail.

8. We are not persuaded. The Oregon statute interpreted in *Esmond* penalized "the unlawful departure of a person from custody or a correctional facility," and defined "correctional facility" as "any place used for the confinement of persons charged with or convicted of a crime or otherwise confined under a court order." *Id.* The broad language of the Oregon statute could readily be interpreted to encompass court-ordered home detention. The New Mexico statute, in contrast, speaks specifically of escaping from a "jail." *See* § 30–22–8. A jail is a "building designated by law, or regularly used, for the confinement of persons held in lawful custody." *Black's Law Dictionary* 834 (6th ed.1990). It is too much of a stretch of the English language to say that Defendant was "constructively" in jail. *See Commonwealth v. Cowan*, 422 Mass. 546, 664 N.E.2d 425, 427–28 (1996) (house arrest with electronic monitoring device is not the equivalent of "jail or house of correction" for purpose of sentencing statute); *State v. Perrett*, 86 Wash.App. 312, 936 P.2d 426, 429–30 (1997) (for purpose of speedy-trial rule, time on home detention is not "jail" time).

9. Given the statutory language in New Mexico, we cannot uphold Defendant's conviction. Although the State claims that this leads to an absurd result, the undesirable result arises from a gap in a 1963 statute that did not contemplate home detention. This Court has no authority to remedy gaps in the criminal code. That task rests with the legislature.

■ 10. Finally, we reject the State's suggestion that Defendant's conviction could be predicated on her home detention agreement, in which she apparently acknowledged that she could be prosecuted for escape. The elements of a criminal offense are set by statute; they cannot be modified by private agreement. The State cites no authority to the contrary. *See In re Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (when arguments in brief are unsupported by cited authority, court may assume that there is no supporting authority).

11. We reverse Defendant's conviction and sentence.

12. **IT IS SO ORDERED.**

FLORES and WECHSLER, JJ., concur.