13 P.3d 980

2000-NMCA-102

**STATE of New Mexico, Plaintiff– Appellant,**

v.

**Byron PEARSON, Defendant–Appellee.**

**No. 19,877.**

Court of Appeals of New Mexico.

Oct. 27, 2000.

Patricia A. Madrid, Attorney General, Elizabeth Blaisdell, Assistant Attorney General, Santa Fe, NM, for Appellant.

Phyllis H. Subin, Chief Public Defender, Donna M. Bevacqua, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

ARMIJO, Judge.

{1} After sentencing Byron Pearson (Defendant) to a one-year prison term, the district court allowed him a period of three months to attend to his personal affairs prior to the commencement of the prison term. At the expiration of this three-month period, Defendant failed to surrender himself, as ordered, to the Department of Corrections (Department). This appeal-the State's from the district court's quashing of an indictment alleging escape-presents a straightforward question: Did Defendant's failure to appear on a date and time certain constitute escape? For the reasons discussed below, we affirm the district court's dismissal of the escape charge.

## FACTUAL BACKGROUND

{2} The stipulated facts are few. On October 16, 1996, District Judge "Woody" Smith of the Second Judicial District entered judgment against Defendant, upon a drug-related charge, and committed him to the state penitentiary for a term of one year. Judge Smith, however, provided Defendant a period of time before he was to serve his sentence; that is, he did not order him to present himself to the Bernalillo County Detention Center until 3:00 p.m. on January 6, 1997. January 6 came and went, however, and Defendant never surrendered himself to corrections officials. He remained at large until police apprehended him on October 10, 1997, more than ten months after he was to commence service of his twelve-month sentence.

{3} During his truancy, the Bernalillo County District Attorney secured an indictment, accusing Defendant of escaping from a state penitentiary contrary to NMSA 1978, § 30-22-9 (1963). In May 1998, Defendant moved to dismiss the indictment, arguing that he could not be convicted of escaping from a penitentiary in which he had never been held. The district court, presided over by the Honorable Diane Dal Santo, agreed, noting: "[e]ven though a Judgment and Sentence has been entered committing [Defendant] to a period of custody, and although [Defendant] was obliged to turn himself in, the question remains as to how can he escape from a place that he has not yet been?" The State now appeals.

## DISCUSSION

{4} Defendant's position is straightforward. He posits that one cannot escape from a place he has never been. His argument emphasizes a concept of place from which one departs. Accordingly, "escape," as contemplated by Defendant, could be rea-

sonably construed as a physical departure from a place of imprisonment. Since he was never imprisoned, he could not escape. It was upon this reasoning that the district court dismissed the indictment. While we recognize a certain logical appeal to this argument, our task is to determine whether the conduct presented is punishable as "escape" under Section 30–22–9.

{5} The Legislature has not defined escape to encompass a person's failure to appear for the commencement of a lawfully entered prison sentence. While this is probably due to legislative oversight, the absence of such provisions turns our focus to the rules of statutory construction. Matters of statutory construction and interpretation are reviewed de novo. *See State v. Shaulis–Powell,* 1999–NMCA–090, ¶ 17, 127 N.M. 667, 986 P.2d 463. Fundamentally, our role is to effectuate the Legislature's intent as evidenced by the statute's plain terms and avoid strained or absurd constructions. *See State v. Foster,* 1998–NMCA–147, ¶ 9, 125 N.M. 830, 965 P.2d 949; *see also State v. Ogden,* 118 N.M. 234, 242, 880 P.2d 845, 853 (1994). "The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary." *Id.*

{6} We thus turn our attention to what constitutes an "[e]scape from [the] penitentiary." Section 30–22–9. The statute provides:

Escape from penitentiary consists of any person who shall have been lawfully committed to the state penitentiary:

A. escaping or attempting to escape from such penitentiary; or

B. escaping or attempting to escape from any other lawful place of custody or confinement and although not actually within the confines of the penitentiary.

Whoever commits escape from penitentiary is guilty of a second degree felony. *Id.* The statute outlines two elements: (1) a lawful committal and (2) an escape from custody or confinement. *See id.; see also* UJI 14–2222 NMRA 2000. Defendant does not dispute that he was lawfully committed to the penitentiary. He argues that his escape

charge was not premised upon his failure to return to prison, but upon his failure even to report to the detention center in the first instance. He correctly points out that he has never been booked, processed into any correctional facility, or subjected to actual confinement. Upon these facts, which distinguish his case from any previously brought before this Court, he contends that he cannot be said to have escaped from any penitentiary. The dispute therefore turns on the second element-that is, an escape from custody or confinement.

{7} This Court has previously recognized that one can escape from constructive, as well as actual, custody; that is, one can be guilty of escape without bending bars or breaking walls. *See, e.g., State v. Martinez,* 1998–NMCA–047, ¶ 4, 125 N.M. 83, 957 P.2d 68 ("We have repeatedly held that a prisoner can violate the [escape from jail] statute without breaking out from the confines of the jail itself."). We have applied the theory of escape from constructive custody solely under our unadorned escape-from-jail statute, NMSA 1978, Section 30–22–8 (1963), which in pertinent part provides: "Escape from jail consists of any person who shall have been lawfully committed to any jail, escaping or attempting to escape from such jail." *See State v. Hill,* 117 N.M. 807, 808, 877 P.2d 1110, 1111 (Ct.App.1994). In *Hill,* we construed "escape" under the escape-from-jail statute to include a person's failure to surrender to State officials after participation in work-release programs or expiration of a temporary furlough. *See id.; State v. Alderette,* 111 N.M. 297, 298, 804 P.2d 1116, 1117 (Ct.App.1990) (work-release program); *State v. Coleman,* 101 N.M. 252, 253, 680 P.2d 633, 634 (Ct.App.1984) (same). As we observed in *Hill,* 117 N.M. at 808, 877 P.2d at 1111, "the dispositive issue [in these cases] is whether Defendant was *lawfully committed* to jail and thereafter failed to return." That is, the analysis turned upon whether the person has evaded the State's post-committal custody, albeit constructive and nonphysical. *See Martinez,* 1998–NMCA–047, ¶ 5, 125 N.M. 83, 957 P.2d 68 (stating that statute did not address the defendant's conduct because she was not then committed to jail and did not escape from jail when she failed to return

home during house arrest); *Hill,* 117 N.M. at 808, 877 P.2d at 1111 (stating that escape-from-jail statute evinced a legislative intent to proscribe the act of failing to return to jail from furlough because the defendant had been lawfully committed to jail). As a body, these cases make clear that the critical issue is not that there exist some actual physical place from which a person departs; rather, it is significant that "the defendant failed to return to jail when he was required to be there." *Martinez,* 1998–NMCA–047, ¶ 4, 125 N.M. 83, 957 P.2d 68.

{8} Similarly, the escape-from-penitentiary statute appears to also cover escape from both actual and constructive custody because it used the term "custody *or* confinement." Section 30–22–9; *see also State v. Doe,* 90 N.M. 776, 777, 568 P.2d 612, 613 (Ct.App. 1977) ("The legislature is presumed not to have used any surplus words and each word has a meaning."). "Confinement," in the present context, has a clear meaning, connoting actual and physical restraint. *See Black's* at 294 ("The act of imprisoning or restraining someone; the state of being imprisoned or restrained....") On the other hand, "custody" connotes some degree of abstraction, encompassing both the actual, physical restraint of another, or a constructive form of deferred or indirect control. *See* Black's Law Dictionary 390 (7th ed.1999) (defining both constructive and physical custody); *cf. State v. Pichon,* 15 Kan.App.2d 527, 811 P.2d 517, 524 (1991) ("[C]ustody contemplates an intent on the part of prison officials to exercise actual or constructive control of the prisoner.... The key factor is that prison officials have not evidenced an intent to abandon or give up their prisoner, leaving him free to go on his way." (Internal quotation marks and citations omitted)).

{9} The question is thus presented: Was Defendant in the custody of the Department of Corrections-either actual or con-structive-such that he could have committed escape when he failed to turn himself in? We hold that he was not. Although Defendant was lawfully committed to the custody of the Department by means of the district court's mittimus, by the power of that order, the Department's custody could vest at a date and time certain, that is, at 3:00 p.m. on January 6, 1997, only upon Defendant actually presenting himself to the Department for booking or intake or incarceration. Absent such receipt into the custody of the Department, there were heretofore no limitations upon Defendant's liberty. Had the Defendant first been received into the custody of the Department, his subsequent failure to surrender would have satisfied the act of escape.

{10} Having considered the language of Section 30–22–9, the absence of any separate statutory provision addressing the open defiance of a lawful sentence imposed for a date and time certain, and this Court's prior interpretations of escape statutes, we determine Defendant's conduct is not included within Section 32–22–9. *See Martinez,* 1998–NMCA–047, ¶ 5, 125 N.M. 83, 957 P.2d 68 ("Penal statutes should not be construed contrary to their plain meaning.").

{11} In so concluding, we note with interest two statutes in which the Legislature addressed, with particularity, acts constituting escape, albeit in different factual contexts. *See* NMSA 1978, § 30–22–10 (1963); NMSA 1978, § 31–3–9 (1999).

## 30–22–10. Escape from custody of a peace officer.

Escape from custody of a peace officer consists of any person who shall have been placed under lawful arrest for the commission or alleged commission of any felony, unlawfully escaping or attempting to escape from the custody or control of any peace officer.

Whoever commits escape from custody of a peace officer is guilty of a fourth degree felony.

## 31–3–9. Failure to appear; penalty.

A person released pending any proceeding related to the prosecution or appeal of a criminal offense or a probation revocation proceeding who willfully fails to appear before any court or judicial officer as required:

A.  is guilty of a fourth degree felony, if he was released in connection with a felony proceeding; or

B.  is guilty of a petty misdemeanor, if he was released in connection with a misdemeanor or a petty misdemeanor proceeding.

{12} Neither of these statutes contemplates the actions of Defendant in the present case. However, the statutes speak with some degree of specificity the Legislature's intention to criminalize escape where one escapes from the custody of an officer and where one fails to appear at a pending proceeding. The absence of such clarity in Section 30–22–9 persuades us that Defendant's action cannot be punished under existing statutes and is a matter best addressed by the Legislature.

## CONCLUSION

{13} In order to sustain a charge of escape under Section 30–22–9, a person who has been convicted and sentenced must first have undergone some moment of actual custody, either through an administrative booking or in-take processing with the Department of Corrections. Absent such custody, a person cannot be said to have committed escape from the penitentiary within the meaning of Section 30–22–9.

{14} For the reasons discussed above, we affirm the district court's quashing of Defendant's indictment for escape from the penitentiary.

{15} **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.