2001-NMCA-007

18 P.3d 326

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joshua HERRERA, Defendant–Appellant.**

No. 20,527.

Court of Appeals of New Mexico.

Dec. 14, 2000.

Certiorari Denied, No. 26,747,
Feb. 5, 2001.

Patricia A. Madrid, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Josephine H. Ford, Assistant Appellate Defender, Albuquerque, NM, for Appellant.

*OPINION*

WECHSLER, Judge.

{1} Defendant Joshua Herrera pleaded guilty to one count of forgery in violation of NMSA 1978, § 30–16–10 (1963), reserving his right to appeal the district court's determina-

tion that Defendant's acts constituted forgery for the purpose of the indictment. We reverse.

*Facts*

{2} Defendant was the only witness at the hearing on his motion to dismiss the indictment. He testified that he found a purse in a dumpster near San Pedro and Kathryn Streets in Albuquerque. Defendant took the purse with him to a friend's house. Either Defendant or his friend called the owner of the purse and the owner retrieved the purse at some point. Defendant testified that after the purse was returned to the owner, he returned to the dumpster where he found a check and some other items. Defendant claimed that he did not know if the check or any of the other items belonged to the owner of the purse and he further claimed that he did not remember the purse owner's name at that time.

{3} Defendant further testified that the check he found was written out to "Cash" and that he thought this meant that he "could get money for [the] check." Defendant explained that when he presented the check to the teller at a credit union to cash it, the teller instructed him to put his name on the payee line next to "Cash." Defendant followed the teller's instructions and added "to Joshua Herrera" next to the word "Cash" on the payee line of the check. Defendant also indorsed the check.

{4} The district court ruled that "Defendant altered a writing purporting to [have] legal efficacy with intent to [defraud], [and] those acts constitute a crime of forgery." The district court stated that the "facts as alleged in [C]ount I of the indictment do, in fact, fit the charge of forgery." The district court thereafter denied Defendant's motion to dismiss the indictment.

*Whether Defendant's Acts Constitute the Crime of Forgery*

{5} Defendant argues on appeal that his acts fail to meet the elements of forgery because (1) he signed his own name and not another's; (2) he did not alter the genuineness of the check; (3) the legislature did not intend the concept of alteration to include the addition of a genuine signature to a genuine check; and (4) he did not alter the check because he did not change the legal efficacy of the check. We address only Defendant's fourth argument because it is upon this ground that we reverse the district court's denial of Defendant's motion to dismiss.

{6} The facts as they relate to Defendant's actions in this case are not in dispute. Based on Defendant's testimony, the district court determined as a matter of law that Defendant's acts constituted forgery. We review the district court's application of the forgery statute to the facts of this case de novo. *See State v. Attaway,* 117 N.M. 141, 144–45, 870 P.2d 103, 106–07 (1994) (explaining that appellate court defers to findings of fact by district court but reviews the court's application of the law to the facts de novo); *State v. Wagoner,* 1998–NMCA–124, ¶ 16, 126 N.M. 9, 966 P.2d 176 (stating that district court's application of law to facts is reviewed de novo). In addition, questions of statutory construction and interpretation are questions of law reviewed de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995). We construe a statute by giving effect to its plain and ordinary meaning. *See State v. Martinez,* 1998–NMCA–047, ¶ 5, 125 N.M. 83, 957 P.2d 68.

{7} Section 30–16–10(A) defines forgery as "falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud." Section 30–16–10(B) defines forgery as the transfer of a forged document. Under Section 30–16–10(A), the State must prove that the defendant made a false document, a false signature, a false indorsement or "changed a genuine [document] so that its effect was different from the original" with an intent to deceive or cheat another. UJI 14–1643 NMRA 2000. Under Section 30–16–10(B) the State must prove that the defendant gave or delivered a document to a victim with the intent to injure, deceive or cheat the victim or another, knowing that the document (1) was a false document; (2) contained a false signature; (3) had a false indorsement; or (4) was changed so that its effect

was different from the original. *See* UJI 14–1644 NMRA 2000.

{8} Defendant did not make a false signature or offer a false indorsement. Thus, a plain reading of the statute and the jury instructions indicates that under the facts of this case, Defendant could only have committed forgery by changing the legal effect of the check. *See id.;* UJI 14–1643. If Defendant did change the legal effect of the check, he could have committed forgery under Section 30–16–10(A) and if he transferred the forged check he could have committed forgery under Section 30–16–10(B). Under either subsection of Section 30–16–10, the State must prove that Defendant changed the legal effect of the check. Therefore, whether Defendant changed the legal effect of the check is the dispositive question in this case. Defendant argues that the act of adding his name to the payee line next to the word "Cash" failed to alter the legal effect of the check. We look to the Uniform Commercial Code to determine whether Defendant is correct.

{9} When a negotiable instrument is made payable to "Cash," it is a bearer instrument. *See* NMSA 1978, § 55–3–109(a)(3) (1992). A bearer instrument refers to an instrument that is payable to anyone possessing the instrument and is negotiable by transfer alone. *See* § 55–3–109(a)(1); NMSA 1978, § 55–3–201(b) (1992).

{10} In contrast, an instrument payable to an identified person is considered an order instrument. *See* § 55–3–109(b). An order instrument requires the indorsement of the identified person before it can be negotiated. *See* 55–3–201(b). The legal effect of an order instrument is different from a bearer instrument because each type of instrument has different negotiability requirements:

> [W]hether an instrument is an order instrument or a bearer instrument is important in determining how an instrument is negotiated. If the instrument is payable to bearer, it can be negotiated by delivery alone. If it is payable to the order of an identified person it cannot be negotiated without the indorsement of that person.

2 Frederick M. Hart & William F. Willier, *Negotiable Instruments Under the Uniform Commercial Code* § 1C.12[1], at 1C–27 (2000) (footnote omitted).

{11} At the time Defendant presented the check to the credit union teller, he possessed a bearer instrument because the check was written out to "Cash." At the direction of the teller, however, Defendant added the words "to Joshua Herrera" to the payee line after the word "Cash." By doing so, Defendant added a specific payee to what was otherwise a bearer instrument. We analyze whether Defendant changed the legal effect of the check by adding his name on the payee line of the check.

{12} The concepts of bearer and order are mutually exclusive. Section 55–3–109(b) states that "[a] promise or order that is not payable to bearer is payable to order if it is payable . . . to the order of an identified person." An instrument payable to bearer cannot be payable to order. *See* 2 Hart & Willier, *supra*, § 1C.12[5], at 1C–32 ("Since the definition of an order instrument excludes instruments that are payable to bearer, if an instrument is payable to bearer it cannot be payable to order.").

{13} As a result, under the definitions in the Uniform Commercial Code, the check in this case could not have been both a bearer and an order instrument. Defendant could have changed the legal effect of the bearer instrument he possessed by adding his name only if the instrument ceased to have bearer effect. We believe that it did not.

{14} The Official Comment to Section 55–3–109 is instructive in this regard. The Comment addresses situations in which an instrument contains terms indicating that it is both payable to bearer and payable to order. *See id.* Official Cmt. 2. The Comment states that when an instrument is payable both to bearer and order, the instrument states contradictory terms, but that it is nonetheless a bearer instrument. *See id.* The Comment explains that

> [a]n instrument that purports to be payable both to order and bearer states contradictory terms. A transferee of the instrument should be able to rely on the bearer term and acquire rights as a holder

without obtaining the indorsement of the identified payee.

*See id.; see also* 2 Hart & Willier, *supra*, § 1C.12[5], at 1C–32 (discussing the Official Comment to UCC § 3–109 and recognizing the view set forth in the Uniform Commercial Code that when inconsistent terms are present, the bearer term prevails).

{15} We discern from the Comment that the addition of an identified payee to a check that is otherwise a bearer instrument is insufficient to transform the legal effect of the check because it is still a bearer instrument and a transferee of the check is able to rely on the bearer term. *See* § 55–3–109 Official Cmt. 2.

{16} We do not view the fact that Defendant wrote "to Joshua Herrera" and not "or Joshua Herrera" as significant. The Official Comment to Section 55–3–109 uses the word "or" in its example of an instrument containing bearer and order terms. *See* § 55–3–109 Official Comment 2. In determining the legal status of a negotiable instrument, the significant words are those that represent either bearer or order terms.

{17} The words "Cash" and "Bearer" have distinct legal meanings. Their presence upon the face of an instrument signifies the particular legal status of that instrument; namely, that the instrument is payable to anyone bearing it. *See* NMSA 1978, § 55–3–201(b) (1992). Similarly, the presence of an identified payee such as "Joshua Herrera" on the face of an instrument signifies that the instrument is payable only to Joshua Herrera.

{18} In this circumstance, with the check payable "to the order of Cash to Joshua Herrera," one who received it could reasonably be confused because it contains both bearer and order instructions. The Uniform Commercial Code resolves such confusion by making the bearer term prevail. *See* § 55–3–109 Official Cmt. 2. We do not view the conjunction "to" in this case as sufficient to avoid confusion from the conflicting terms so as to preclude application of the principles of the commentary.

{19} Indeed, under specific circumstances, a bearer instrument can be transformed to an order instrument. Section 55–3–109(c) provides that when a bearer instrument is specially indorsed, it can be transformed to an order instrument. A special indorsement is one that "identifies a person to whom it makes the instrument payable." NMSA 1978, § 55–3–205(a) (1992). Defendant's indorsement in this case included only his name and did not include language making the check payable to an identified person. *See* § 55–3–205(c). Thus, the indorsement was not a special indorsement and was not sufficient to transform the legal effect of the check from bearer to order. Instead, because Defendant's indorsement included only his signature, the indorsement qualified as an indorsement in blank. *See* § 55–3–205(b). Section 55–3–205(b) states that when an instrument is indorsed in blank, "the instrument 'becomes payable to bearer and may be negotiated by transfer of possession alone.' " Consequently, Defendant's indorsement did not change the legal effect of the check from a bearer instrument into an order instrument under Section 55–3–109.

{20} Because Defendant did not change the legal effect of the check when he added his name to the payee line or when he indorsed it, Defendant did not commit the crime of forgery. *See* UJI 14–1643 (requiring a change in the legal effect of a document as an element of forgery); *see also State v. Rodriguez*, 101 N.M. 192, 194, 679 P.2d 1290, 1292 (Ct.App.1984) (stating that penal statutes are construed strictly and in a criminal defendant's favor).

{21} Our conclusion that Defendant did not forge the check in question because he failed to change the legal effect of the check is not foreclosed, as the State argues, by *State v. Smith*, 95 N.M. 432, 433, 622 P.2d 1052, 1053 (1981). In *Smith*, the defendant added a payee to a blank payee line. *See id.* at 433, 622 P.2d at 1053. Therefore, the check was a bearer instrument before the defendant wrote in a payee because it had no payee. *See id.; see also* § 55–3–109(b) (describing bearer instruments to include a document lacking an identified payee). The bearer instrument at issue in *Smith* was also

incomplete. *See* § 55–3–109 Official Cmt. 2 ("Instruments that do not state a payee are in most cases incomplete instruments."). In contrast to this case, when the defendant in *Smith* filled in the blank payee line with the name of a specific payee, the defendant changed the legal status of the check from a bearer instrument to an order instrument because the once-blank payee line was replaced by a specific payee. *See* § 55–3–109(b) (describing an order instrument as an instrument payable to an identified person); *see also* 2 Hart & Willier, *supra*, § 1C.12[5], at 1C–33 (stating that if a blank payee line is filled in without the authorization of the drawer the instrument becomes "an alteration of an incomplete instrument").

{22} In addition, unlike Defendant in this case, the defendant in *Smith* did not present a check with inconsistent terms. Rather, the defendant in *Smith* presented a check that in the end contained only a specific, identified payee. Thus, we find *Smith* distinguishable from the present case.

*Conclusion*

{23} Defendant did not commit the crime of forgery. We reverse the district court's denial of Defendant's motion to dismiss the indictment.

{24} **IT IS SO ORDERED.**

BOSSON and ELLINGTON, JJ., concur.