2002-NMSC-019

48 P.3d 64

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Victor CARBAJAL, Defendant–Petitioner.**

**No. 26,829.**

Supreme Court of New Mexico.

May 29, 2002.

Phyllis H. Subin, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} Defendant Victor Carbajal was charged with one count of forgery, contrary to NMSA 1978, § 30–16–10(A) (1963), and one count of receiving stolen property, contrary to NMSA 1978, § 30–16–11 (1987). The trial court dismissed both counts, and the State appealed. Defendant now appeals from that portion of the Court of Appeals opinion reversing the trial court's dismissal of the forgery charge. *State v. Carbajal,* 2001–NMCA–015, ¶¶ 4–8, 130 N.M. 284, 24 P.3d 316. We granted Defendant's petition for a writ of certiorari because we perceived

a conflict among some of the opinions of the Court of Appeals and because a conviction for forgery under these facts presents a significant question of law under the due process clause of the Federal and State Constitutions. *See* Rule 12–502(C)(4)(b), (c) NMRA 2002. We note jurisdiction under NMSA 1978, § 34–5–14(B) (1972).

{2} We conclude that under the facts of this case, Defendant did not commit the crime of forgery as contemplated by the legislature; consequently, we reverse the portion of the Court of Appeals opinion that concludes otherwise and affirm the trial court's order.

■ {3} Defendant filed a pre-trial motion to dismiss pursuant to Rule 5–601 NMRA 2002 and *State v. Foulenfont,* 119 N.M. 788, 895 P.2d 1329 (Ct.App.1995). In that motion Defendant and the State stipulated to the following facts, upon which this appeal is based:

1.  On July 16, 1998 Defendant entered Famous Sam's sports bar in Albuquerque, NM at 1001 Central N.W.

2.  Upon entering[,] Mr. Carbajal, along with another individual[,] ordered a pitcher of beer from Kristin R. Tubb, a waitress at Famous Sam's.

3.  Ms. Tubb returned with the pitcher and requested $6.75 from Mr. Carbajal.

4.  Mr. Carbajal produced a Traveler's Check (# RH111–724–274) and signed his own name, Victor Carbajal, on the area designated "pay to the order of" and gave it to Ms. Tubb . . .

5.  Ms. Tubb states that she asked for his license for verification. . [His signature] appeared to be the same as the signature on his license . . . .

6.  Ms. Tubb states that he made no other markings on the check, neither front nor backside . . . .

7.  The signature of H.T. Jost II appeared on the top line.

8.  Henry Jost reported this and other checks lost on July 15, 1998.

9.  A second [traveler's check] was found on the person of Mr. Carbajal.

This appeal raises the question of whether the forgery statute can be interpreted to cover these stipulated facts. As a question of statutory interpretation, we review it de novo. *State v. Herrera*, 2001–NMCA–007, ¶ 6, 130 N.M. 85, 18 P.3d 326.

{4} Forgery consists of "falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud." Section 30–16–10(A). Our Uniform Jury Instructions have identified from our case law four different theories of the crime: (1) making a false writing, (2) making a false signature, (3) making a false endorsement, and (4) changing "a genuine [document] so that its effect was different from the original." UJI 14–1643 NMRA 2002. The parties agree that only the fourth theory is potentially applicable to this case.

{5} This fourth theory derives from *State v. Cowley*, 79 N.M. 49, 439 P.2d 567 (Ct.App. 1968). In that case, the defendant added entries to an invoice from a credit card purchase after the customer had signed it, and changed the total charge from $2.95 to $22.95. In deciding that this constituted forgery the Court of Appeals stated, "[I]t appears to be clear from the language of the statute that the unauthorized alteration of a genuine instrument, of the kind contemplated by the statute, with the requisite fraudulent intent, is forgery. . . ." *Id.* at 51, 439 P.2d at 569.

{6} We believe that subsequent cases have refined the inquiry, but left the rationale of the fourth theory unclear when the document that is alleged to have been fraudulently altered is a negotiable instrument such as a check. First, in *State v. Smith*, 95 N.M. 432, 622 P.2d 1052 (Ct.App.1981), the Court of Appeals held that the defendant committed forgery when, in order to purchase goods, he presented to a merchant a once-stolen check that was completed except for the payee line. The merchant, acting as the defendant's agent, put his company's name on the payee line. Adding the name in the blank payee line changed what was once bearer paper, an instrument negotiable by transfer alone, *see* NMSA 1978, § 55–3–109 cmt. 1 (1992), into order paper, an instrument payable to an identified person that cannot be negotiated without that person's endorsement, *see id.* In this way, "the defendant altered a writing purporting to have legal efficacy with an intent to defraud." *Smith*, 95 N.M. at 433, 622 P.2d at 1053.

{7} Next in this line of cases is *State v. Deutsch*, 103 N.M. 752, 713 P.2d 1008 (Ct. App.1985), which makes no mention of *Smith*. In that case, the Court of Appeals held that it was not forgery for the defendant to endorse checks, with his genuine signature, made to a company for which he no longer had the authority to sign because it was in trusteeship. The court reasoned that a genuine signature without authorization is not forgery under the statute: "it is not sufficient for the writing to tell a lie, the writing itself must be a lie." *Id.* at 760, 713 P.2d at 1016. Thus, this was not a false endorsement, but rather an endorsement without authorization, which did not support a conviction for forgery.

{8} Both the trial court and the Court of Appeals perceived a tension between *Deutsch* and *Smith*. In each case the defendant added language to a check in order to fraudulently draw on it. In each the addition was, in some sense, genuine; the defendant's signature in *Deutsch* was genuine, as was the company's name in *Smith*. However, in *Smith* the alteration supported the charge of forgery, whereas in *Deutsch* it did not.

{9} Finally, in the recent case of *Herrera*, 2001–NMCA–007, 130 N.M. 85, 18 P.3d 326, the Court of Appeals held that it was not forgery for the defendant to add "to [defendant's name]" to the payee line of a signed check made out to "Cash" and to endorse it with his true signature. The court reasoned that, because the signatures were genuine, the defendant could only have committed forgery by altering a genuine document. In *Herrera*, altering meant changing the legal effect of the check. Because a check made out to "cash" is bearer paper, the court reasoned that defendant would have committed forgery if his addition changed the instrument to order paper. The Court of Appeals concluded that he did not change the instrument because the Uniform Commercial Code makes bearer language prevail when both

bearer and order language are present. *Id.* ¶ 18; Section 55–3–109 cmt. 2.

{10} On appeal to the Court of Appeals, Defendant relied on *Deutsch* and argued that a genuine signature added to the payee line of a traveler's check is not a false endorsement, but an endorsement without authorization. The State argued that the case was instead controlled by *Smith,* and by changing the legal effect of the traveler's check, Defendant had committed forgery. The trial court had found *Deutsch* and *Smith* to be contradictory, and *Deutsch,* as the later case, to be controlling.

{11} The Court' of Appeals rejected the trial court's approach and reconciled *Deutsch* and *Smith* on two grounds. First, *Deutsch* was concerned with making a false signature, and *Smith,* as well as *Herrera* and this case, are similarly concerned with changing a genuine check so that its effect is different from the original. Second, the lack of authorization in *Deutsch* was entirely outside of the document. The Court of Appeals then concluded that this case was controlled by *Smith,* and that these facts constituted forgery. The Court of Appeals also noted that the check was presented without a countersignature. The court concluded, however, that the issue of legal efficacy was not raised, and in any event, the forgery statute only requires the writing to *purport* to have legal efficacy.

{12} We need not decide how to reconcile *Deutsch* with *Smith* and *Herrera* because, even under the analysis of *Smith* and *Herrera,* we conclude that Defendant did not alter the legal effect of the traveler's check. In so concluding, we cannot agree with the Court of Appeals' implicit conclusion that the absence of the countersignature is not significant because the language of the forgery statute only requires that the writing purport to have legal effect. *Carbajal,* 2001–NMCA–015, ¶ 8, 130 N.M. 284, 24 P.3d 316. The opinion of the Court of Appeals could be read to mean that an alteration that purports to have legal effect will support a conviction of forgery, even if it does not in fact alter the document. On the other hand, the opinion could simply mean that a traveler's check, even without the countersignature, is a writ-

ing that purports to have legal effect and thus is a proper subject of forgery.

{13} To the extent that the Court of Appeals intended the former, we are unable to reconcile that position in this case with the approach of *Herrera.* In that case, the fact that the addition of "to [defendant's name]" did not actually change the bearer paper to order paper under the Uniform Commercial Code meant the defendant had not committed forgery, despite the fact that the defendant added that language at the behest of the teller and so that he could cash a check which was not made out to him. *Herrera,* 2001–NMCA–007, ¶ 15, 130 N.M. 85, 18 P.3d 326. Similarly, if Defendant did not change the legal effect of the traveler's check by adding his name to the "pay to the order of" line, then he is not guilty of forgery despite his apparent fraudulent intent.

{14} To the extent that the Court of Appeals intended the latter, we agree. The language "purporting to have any legal efficacy" draws from the common law rule that only certain classes of documents are proper subjects of forgery. Thus, for example, a defendant who produces a faked copy of a famous speech is not guilty of forgery even if that defendant sells the copy as a true original. The faked speech does not, in itself, purport to have any legal efficacy; on its face the speech itself does not provide a foundation for liability. *See Cowley,* 79 N.M. at 52, 439 P.2d at 570; UJI 14–1643 committee cmt. ("The phrase 'legal efficacy' refers to the fact that the instrument on its face could be made the foundation of some liability."). *See also* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 415–18 (3d ed.1982). By contrast, a document such as a traveler's check does purport to have legal efficacy even without the countersignature and does, on its face, provide a foundation for liability for the amount of the check. Read in this light, "purporting to have any legal efficacy" does not modify "falsely making or altering," but rather "writing." That is, it does not lessen in any way the requirement that Defendant materially alter "a genuine [document] so that its effect was different from the original," UJI 14–1643, even if the defendant "purport[ed]" the change to have legal effect.

"No change in the wording of a genuine writing will transform it into a false writing unless it amounts to a material alteration,—that is, unless there is a difference in legal meaning between the original wording and the changed form." Perkins & Boyce, *supra* at 425.

■ {15} The key issue thus becomes whether placing a genuine signature in the "pay to the order of" line of a traveler's check reported lost by the original owner and signed once, but not countersigned, is a material alteration of the original traveler's check such that it has a different legal effect. Such a material alteration would change the instrument from bearer to order paper or would otherwise change its negotiability. Resolving this question is complicated in this case by the unique character of traveler's checks.

{16} According to NMSA 1978, § 55-3-104(i) (1992), a traveler's check is "an instrument that (i) is payable on demand, (ii) is drawn on or payable at or through a bank, (iii) is designated by the term 'traveler's check' or by a substantially similar term, and (iv) requires, as a condition to payment, a countersignature by a person whose specimen signature appears on the instrument." By requiring two signatures as a condition for payment, traveler's checks differ from the negotiable instruments considered in *Smith* and *Herrera.*

{17} One commentator has described the operation of a traveler's checks thus:

A traveler's check usually has two places where the purchaser must affix his signature. The first spot often located in one corner of the instrument serves the dual purpose of identifying the purchaser as the payee and of providing a facsimile of the purchaser's signature so that his identity can be verified. This first spot is the equivalent of the line for the payee's name found on an ordinary check. Until the payee affixes his signature in this first spot, the instrument does not contain the payee's name. The instrument is therefore incomplete. When the first spot is signed, the traveler's check becomes a completed negotiable instrument. The second spot for the purchaser's signature is, for all practical purposes, merely the place where the payee endorses the instrument to his transferee. *The fact that the words "pay to the order of" are contained on the line where he is supposed to insert the name of his transferee should be regarded as mere convenience.* As a result, when the instrument is lost prior to a signature being affixed at either place, a signature by the finder in the first spot makes the instrument payable to the finder's order. His signature on the second spot will negotiate the instrument. *If the purchaser has signed the instrument at the first spot before losing it, it will be payable to his order and therefore can not be negotiated without his signature in the second spot.*

4 William D. Hawkland & Lary Lawrence, *Uniform Commercial Code Series* § 3-104:17, at 3-70 (1999) (emphases added & footnotes omitted). Thus, we conclude that the area of the traveler's check altered by Defendant "should be regarded as mere convenience." The traveler's check was therefore payable to Mr. Jost's order before and after the alteration. For these reasons, we cannot say as a matter of law that Defendant falsely altered the traveler's check so that its effect was different from the original. We read *Herrera* to control this determination. In both *Herrera* and this case the defendant added words to the payee line of a check; in each, because of the Uniform Commercial Code and the nature of the negotiable instrument at issue, the defendant's alteration did not have legal effect and thus did not constitute forgery under Section 30-16-10(A). *See Herrera*, 2001-NMCA-007, ¶ 15, 130 N.M. 85, 18 P.3d 326.

{18} In reaching this conclusion we are mindful of the policy that underlies the crime of forgery and informs our understanding of its application. "Forgery is a crime aimed primarily at safe-guarding confidence in the genuineness of documents relied upon in commercial and business activity. Though forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*

§ 8.7(j)(5) (1986) (footnote omitted). Defendant's alteration of the traveler's check did not change its legal effect and did not draw into question the genuineness of a document relied upon in commercial and business activity. Any subsequent holder of the traveler's check would have known from its face that it could not be negotiated as written, as did the business in this case.

{19} For these reasons we conclude that Defendant did not commit forgery as contemplated by Section 30–16–10(A). Accordingly, we reverse the Court of Appeals on the issue of forgery. As neither party appealed the Court of Appeals' conclusion that Defendant was not guilty of receiving stolen property, we do not reach that issue.

{20} **IT IS SO ORDERED.**

WE CONCUR: JOSEPH F. BACA, Justice, GENE E. FRANCHINI, Justice, PATRICIO M. SERNA, Chief Justice (dissenting), and PETRA JIMENEZ MAES, Justice (dissenting).

MAES, Justice (dissenting).

{21} I respectfully dissent. I believe a fundamental aspect of this case, which the majority opinion does not address, is the interface between commercial paper and criminal law. Thus my principal disagreement with the majority is my belief that the "effect" meant in UJI 14–1643 NMRA 2002 is not the legal effect considering only how Defendant could have affected the negotiability of the traveler's check as a matter of the law of commercial paper. Rather, I believe the effect that is meant is bound up in the fact of Defendant's act of alteration, whereby the check appeared to be made to his order. This act, combined with Defendant's intent, was "falsely altering ... any part of [a] writing purporting to have legal efficacy with intent to injure or defraud." *See* NMSA 1978, § 30–16–10(A) (1963).

{22} Contrary to the Majority, I do not believe this case and *State v. Herrera*, 2001–NMCA–007, 130 N.M. 85, 18 P.3d 326, are on point. The majority categorizes *Herrera* and this case together on the basis of the fact that under the law of commercial paper, the effect of the check was unchanged by the act of the defendant. This is because the "pay to the Order of" line where Defendant signed the traveler's check is deemed by the Majority to be for the "mere convenience" of the parties, Defendant's signing his name there having no effect. The Majority's authority for this position is Professor Hawkland (4 William D. Hawkland & Lary Lawrence, *Uniform Commercial Code Series* § 3–104:17); however, no further authority is cited by Hawkland and research has shown that this treatise has never been very widely relied on in the case law for this point. I would treat the person whose name appears on this line of the check as a payee who is in the same shoes as the payee on an ordinary check. I believe this is in the interest of 1) bringing the operation of traveler's checks into line with the operation of other checks, and 2) greater certainty in the conduct of commercial transactions generally when the check is made out to a determinate party. I read *Herrera* as holding that the finder of a check made out to cash can legally negotiate the check. The effect of the document was unchanged, and remained unchanged when the defendant acted upon it. The expectation of the maker was not disrupted. In this case, Defendant was not merely taking advantage of the fortuitous status of a check that came into his hands; the check required false alteration before he could use it. It is his alteration for the purpose of using the check as a medium of exchange, not the fact that it was technically impossible for him to do so under the law of commercial paper, that is significant. Thus I believe Defendant did "in fact" alter the document. *See Majority Opinion* ¶ 12.

{23} The crime of forgery applies to "any writing *purporting* to have legal efficacy." Section 30–16–10(A) (emphasis added). In the context of interpreting this language, the Court of Appeals has stated that " '[n]o definition of forgery can be comprehensive enough to include all the crimes that may be committed by simple use of pen, paper and ink.' " *State v. Nguyen*, 1997–NMCA–037, ¶ 12, 123 N.M. 290, 939 P.2d 1098 (quoting *Muhammad v. Commonwealth*, 13 Va.App. 194, 409 S.E.2d 818, 821 (1991)). The case upon which the Court of Appeals relied is

instructive. In *Muhammad,* the defendant altered a stolen check by filling in his name in the payee line and by endorsing the check; however, the defendant left the signature line on the front of the check blank. 409 S.E.2d at 819. Similar to Defendant's argument in the present case, the defendant in *Muhammad* argued "that because no signature of a drawer appeared on the check, the check did not meet 'the legal efficacy' test." *Id.* The court concluded,

> The fact that a document may be so irregular that a bank would be justified in refusing payment, or that a transferee would be justified in not accepting the instrument, does not mean that the writing lacks apparent legal efficacy. A check which has been fraudulently written or altered in a manner that possibly will operate to the injury of another constitutes a forgery.

*Id.* (citation omitted). In this case, Defendant's alteration of the travelers check gave it "a sufficient appearance of genuineness that it possibly may operate to the injury of another." *Id.* (quoted authority and quotation marks omitted). As a result, the travelers check *purported* to have legal efficacy within the meaning of Section 30–16–10(A).

{24} The effect of the check in the instant case was changed with Defendant's act in that the check now was purportedly to the order of Defendant, even without the intermediate step of a countersigning. Thus this is an even more egregious case than *State v. Smith,* 95 N.M. 432, 622 P.2d 1052 (Ct.App. 1981), where the defendant possessed bearer paper but, with an intent to defraud, caused the name of a specific payee to be written in. Here, Defendant took order paper and altered it to his own order, without any plausible argument that he was properly in possession of bearer paper and had merely indorsed it.

{25} For these reasons I would affirm the Court of Appeals.

I CONCUR: PATRICIO M. SERNA, Chief Justice.