Certiorari Denied, August 18, 2017, No. S-1-SC-36576

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2017-NMCA-070**

**Filing Date:  June 28, 2017**

**Docket No. A-1-CA-33847**

**STATE OF NEW MEXICO,**

  **Plaintiff-Appellee,**

**v.**

**GORDON LEONG,**

  **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Brett R. Loveless, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Josephine H. Ford, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**OPINION**

**ZAMORA, Judge.**

**{1}** Gordon Leong (Defendant) was convicted of forgery (make or alter), contrary to NMSA 1978, Section 30-16-10(A)(1) (2006); forgery (issue or transfer), contrary to Section 30-16-10(A)(2); conspiracy to commit forgery (issue or transfer), contrary to NMSA 1978, Section 30-28-2(A) (1979); and making a false affidavit (perjury), contrary to NMSA 1978,

Section 66-5-38 (1978), a fourth degree felony pursuant to NMSA 1978, Section 30-25-1(B) (2009). On appeal, Defendant raises four issues: (1) whether admission of an affidavit of residency with an affixed photocopy of Defendant's driver's license was in error when the driver's license photograph and the signature on the affidavit were not properly authenticated; (2) whether Defendant's act of signing his name on an affidavit of residency, which contained a false statement, constituted forgery (make or alter); (3) whether the district court erred in failing to include the specific language, "knowing it to be a false writing" in the instruction for forgery (issue or transfer); and (4) whether it was error to admit testimony on the conspiracy charge from two witnesses whose statements were not in furtherance of a conspiracy. We reverse in part and affirm in part.

## I.     BACKGROUND

**{2}**     Defendant was charged with 386 counts relating to driver's license applications with the Motor Vehicle Department (MVD), and ultimately tried on 74 of those counts. The jury convicted Defendant of one count each of: (1) forgery (make or alter), (2) forgery (issue or transfer), (3) conspiracy to commit forgery (issue or transfer), and (4) perjury. All four convictions were based on events that occurred on February 16, 2010, and involved an MVD form titled "Affidavit of New Mexico Residency [(the Affidavit)] by a Relative, Friend, Employer or Other," signed by Defendant and which included a photocopy of Defendant's driver's license in the top right corner of the affidavit, in connection with the driver's license application of  Tian F. Guo.

**{3}**     On January 21, 2010, Defendant signed the Affidavit asserting that he was Guo's friend and that Guo lived with him at the Warren House Apartments at 7601 Lomas Boulevard Northeast, Apartment 69. The Affidavit included a copy of Defendant's driver's license. By submitting the Affidavit, Defendant was verifying that Guo was a New Mexico resident. Defendant  provided the Affidavit to MVD thereby allowing Guo to obtain a New Mexico driver's license. MVD issued a driver's license for Guo based, in part, on this affidavit of residency. The onsite manager for the apartments testified that she executed a lease with Defendant and that Defendant was the only one allowed to live in that apartment between August 2009 and April 2010. At sentencing, the district court merged the convictions for forgery (make or alter) and perjury.

## II.     DISCUSSION

### A.     The Affidavit

**{4}**     Defendant claims error in the admission of the Affidavit, arguing that it was not properly authenticated under Rule 11-901 NMRA. "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

**{5}**     When authenticating an item of evidence, Rule 11-901(A) requires sufficient

evidence be presented to show that the item is what the proponent claims it to be. Rule 11-901 provides various examples of what would be necessary to satisfy the requirement of authentication of evidence. Under Rule 11-901, sufficient evidence for authentication of a document can be provided by presenting the "[t]estimony of a [person] with knowledge[,]" by submitting evidence that the document is filed in a public office as authorized by law, or by submitting evidence that the document is "a purported public record or statement . . . from the office where items of this kind are kept." Rule 11-901(B)(1), (7)(b).

{6}     The State presented testimony from Mark Lucero, a manager with MVD with fifteen years of experience. Lucero testified that the Affidavit was the type of document that is kept in the regular course of business at MVD. Defense counsel attempted to elicit testimony from Lucero that copying a driver's license was not a typical practice with MVD. In response, Lucero testified that affidavits from different offices may or may not include a copy of a license because MVD offices have different policies and procedures, but it was his belief that an agent would have verified an affiant's driver's license in some manner. Lucero explained that when a person signs an affidavit of residency for another, as in this case, the MVD employee would ask for a driver's license or other form of identification for verification. A copy of the identification document would be made, and some agents would keep the copy separate from the affidavit, while other agents would put them together. Lucero agreed that an agent would "essentially card the person" who is vouching for a driver's license applicant. The district court found that Lucero had knowledge about the practices and procedures of MVD and that he provided testimony that a driver's license copy is made when one person is vouching for the residency of another.

{7}     Defendant argues that the State should have done more to properly authenticate the Affidavit, including having an expert compare signatures and conducting a handwriting analysis. Defendant argues that Lucero worked in only one office and did not have sufficient knowledge of procedures at other MVD offices. As the State points out, however, Lucero processed 5,000 or more applications for foreign nationals, and he had personally assisted Defendant in dealing with other driver's license applications for foreign nationals. Lucero testified that whether or not a copy of a driver's license was attached or separate, a driver's license copy would be made of the person vouching for the applicant.

{8}     Lucero's testimony established that he was a "person with knowledge" of the policies and procedures at MVD and that the Affidavit was a record from an MVD office in which documents such as the Affidavit are kept. Lucero's testimony was sufficient to lay a foundation that the document was what it was purported to be. We hold that the district court did not abuse its discretion in allowing admission of the Affidavit.

## B.     Forgery

{9}     The main issue in this case is whether entering false information into a genuine affidavit amounts to forgery—in other words, whether forgery is committed when a defendant lies about a fact to which they are attesting in an affidavit. In the Affidavit,

3

completed and signed by Defendant under penalty of perjury, Defendant declared that he was a friend of Guo and that Guo lived at 7601 Lomas Boulevard Northeast, Apartment 69 in Albuquerque, New Mexico. Defendant, the affiant, produced his driver's license, a copy of which was made and attached to the Affidavit. Guo did not, in fact, live at the address as attested to by Defendant in the Affidavit. The Affidavit was the basis for Defendant's convictions for forgery (make or alter) and forgery (issue or transfer).

**{10}** On appeal, the parties are in disagreement as to whether or not the Affidavit falls under our forgery statute. This raises an issue of statutory interpretation, which we review de novo. *See State v. Herrera*, 2001-NMCA-007, ¶ 6, 130 N.M. 85, 18 P.3d 326. "Our primary goal when interpreting statutory language is to give effect to the intent of the [L]egislature." *State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *State v. Marshall*, 2004-NMCA-104, ¶ 7, 136 N.M. 240, 96 P.3d 801; *see* NMSA 1978, § 12-2A-2 (1997) ("Unless a word or phrase is defined in the statute or rule being construed, its meaning is determined by its context, the rules of grammar and common usage.").

**{11}** "Forgery consists of: (1) falsely making or altering any signature to, or any part of, any writing purporting to have any legal efficacy with intent to injure or defraud; or (2) knowingly issuing or transferring a forged writing with intent to injure or defraud." NMSA 1978, § 30-16-10 (2006). "Forgery has been defined as a crime aimed primarily at safeguarding confidence in the genuineness of documents relied upon in commercial and business activity. Though a forgery, like false pretenses, requires a lie, it must be a lie about the document itself: the lie must relate to the genuineness of the document." *State v. Baca*, 1997-NMSC-018, ¶ 5, 123 N.M. 124, 934 P.2d 1053.

**{12}** According to Defendant, his conduct in including false information in a sworn affidavit could only have supported a charge of perjury and not forgery. In 1906 our Supreme Court discussed the difference between the crime of forgery and the crime of perjury in a case involving a defendant who was indicted under a law similar to our current forgery statute. *See Territory v. Gutierrez*, 1906-NMSC-003, ¶ 8, 13 N.M. 312, 84 P. 525. In *Gutierrez*, the defendant, a notary public, made a certificate of acknowledgment of a written instrument, which contained false information. *See id.* ¶ 4. The applicable law in that case prohibited any person from falsely making, altering, forging, or counterfeiting any public record or certificate with intent to injure or defraud any person. *Id.* ¶ 3. The Court, referring to a variety of sources, determined that a forgery statute punishes those who falsely make an affidavit, whereas a perjury statute punishes those who make and certify a false affidavit. *See id.* ¶¶ 8-9. Thus, if a person includes false statements in an affidavit that the person signs under oath, that person has made and certified a false affidavit, which cannot be the basis for a forgery conviction.

**{13}** The discussion in *Gutierrez* is in accordance with authorities from other jurisdictions. In *Marteney v. United States*, 216 F.2d 760, 763 (10th Cir. 1954), the Tenth

Circuit Court of Appeals held that the word "falsely" when applied to the making or altering of a writing in support of a charge of forgery does not refer to the contents of the writing or to the falsity of that content, but pertains to the genuineness of the writing itself. As stated by the United States Supreme Court in *Gilbert v. United States*, 370 U.S. 650, 658 (1962), where the "falsity" is found in the rendition of the facts, there is no forgery. Thus, when it is intended that a document that contains blank spaces be filled in, such as the MVD affidavit in this case, filling in those blanks is not considered an alteration. *See* 4 Am. Jur. 2d *Alteration of Instruments* § 37, at 25 (1995); *see also Lucero-Carrera v. Holder*, 349 F. App'x 260, 263 (10th Cir. 2009) (defining "forgery" at common-law as false making of a document that is not what it purports to be, as opposed to a document that is genuine but contains false representations); *United States v. Barber*, 39 F.3d 285, 289 (10th Cir. 1994) (determining that the defendant committed forgery when he created false court documents and signed the judge's name on them before presenting them to another with the intent to deceive); *United States v. Glasener*, 81 F. 566, 568 (S.D. Cal. 1897) (stating that one may falsely make an affidavit in which every sentence is true; or may make an affidavit in which every sentence is false but only the false making of an affidavit constitutes forgery); *De Rose v. People*, 171 P. 359, 360 (Colo. 1918) (clarifying that to "falsely make" a writing refers to the paper itself being falsely made and not to the truth of the statements contained in the writing; a false statement in a writing that is genuine, "by which another person is deceived," is not forgery); *Reese v. State*, 378 A.2d 4, 7 (Md. Ct. Spec. App. 1977) (distinguishing between false contents in a genuine document and false making of a spurious document and noting that no amount of false information or statements will make a genuine instrument into a false instrument); *Ford v. State*, 2011 WY 122, ¶ 16, 259 P.3d 1178, 1184 (Wyo. 2011) (referring to the Model Penal Code commentary on forgery, which explains that "[t]he prohibited conduct is drafted so as to focus the offense upon falsity as to genuineness or authenticity, rather than upon the falsity of any statement contained in a legitimate document" (emphasis, internal quotation marks, and citation omitted)).

**{14}**     The State claims that *Gutierrez* was distinguished in *State v. Cowley*, 1968-NMCA-011, 79 N.M. 49, 439 P.2d 567. The State also claims that the Affidavit in this case was merely a form and not an "official certificate." We agree that this Court in *Cowley*, a case involving the physical alteration of a genuine credit card invoice, distinguished the facts of that case from those in *Gutierrez*, a case involving a notary public inserting false statements into a genuine certificate of acknowledgement. *See Cowley*, 1968-NMCA-011, ¶¶ 3-4, 10. However, *Cowley* did not overturn *Gutierrez* and is not applicable under the facts of this case. As noted in *Gutierrez* and supported by a multitude of out-of-state legal authority, when a genuine document or writing contains false information, there is no basis for a charge of forgery. *See* 1906-NMSC-003, ¶ 8.

**{15}**     Defendant claims that the evidence was insufficient to support his convictions. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). We view the evidence in

5

the light most favorable to the verdict, and we indulge all inferences and resolve all conflicts in the evidence in favor of the verdict. *See State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

**{16}** Having established the legal requirement of the statute, we turn to Defendant's argument that the evidence was insufficient to support his convictions. Defendant did not make or manufacture a false document. Instead, he used a genuine MVD affidavit form and signed it with his actual name. The only portion of the Affidavit that was false was the information that Defendant inserted into the affidavit form. Based on our discussion, we hold that there was insufficient evidence to support Defendant's conviction for forgery (make or alter). We therefore reverse Defendant's conviction.

**{17}** We note that, for the charge of forgery (make or alter), the jury was instructed that Defendant "made a false endorsement to a writing." The jury instructions did not include any reference to "falsely making or altering," which is the focus of the arguments made on appeal and is the language from the forgery statute. *See* § 30-28-10(A)(1). Our Supreme Court, in discussing different interpretations of the forgery statute, noted that a writing signed with a defendant's genuine signature is not a false endorsement and cannot support a conviction of forgery. *See State v. Carbajal*, 2002-NMSC-019, ¶ 7, 132 N.M. 326, 48 P.3d 64. Therefore, to the extent Defendant's forgery conviction was based on the claimed false endorsement, it cannot stand.

**{18}** The State also relied on the Affidavit to support Defendant's conviction for forgery (issue or transfer). For the reasons discussed, we hold that there was also insufficient evidence to support the forgery (issue or transfer) conviction, and we reverse that conviction as well.

## C.     Conspiracy to Commit Forgery

**{19}** Defendant was convicted of conspiracy to commit forgery for providing Guo with an affidavit of residency containing false information. "Conspiracy consists of knowingly combining with another for the purpose of committing a felony within or without this state." NMSA 1978, § 30-28-2(A) (1979). Defendant bases his objection to the  conviction on the admission of statements made by his alleged co-conspirators, Alex Cheung and Tim Cheung (the Cheungs). The State contends that the conspiracy conviction was "with regard to his forgery (issue or transfer) with . . . Guo," not the Cheungs. Forgery (issue or transfer) consists of "knowingly issuing or transferring a forged writing with intent to injure or defraud." Section 30-16-10(A)(2). To the extent that Guo and Defendant conspired to commit any act, it was to commit the act of issuing or transferring an affidavit that contained false information in order to obtain a license for Guo. As is clear from our preceding discussion, they did not conspire to issue or transfer a forged affidavit for that purpose. Therefore, Defendant's conspiracy conviction, as charged and prosecuted by the State cannot stand. *State v. Foulenfont*, 1995-NMCA-028, ¶¶ 1, 11-12, 119 N.M. 788, 895 P.2d 1329 (upholding a dismissal of burglary and conspiracy to commit burglary charges where, as a

6

matter of law, the defendant did not commit burglary).

**D.    Perjury**

**{20}**    Defendant was convicted of "making false affidavit perjury" under the Motor Vehicle Code. NMSA 1978, § 66-5-38 (1978). The only attack Defendant makes with respect to this conviction is an implied one. By arguing that the Affidavit should not have been admitted, Defendant appears to be attacking the validity of his perjury conviction. As discussed in this opinion, we have determined that the Affidavit was properly admitted. Therefore, Defendant's perjury conviction is supported by the evidence.

**{21}**    The State points out that the district court merged Defendant's convictions for perjury and forgery for purposes of sentencing and argues that if the forgery conviction is reversed this Court has the authority to remand "for entry of judgment on the lesser included offense" of perjury. Remand for entry of judgment is not necessary because the perjury conviction, which was merged with the conviction for forgery was not vacated when the convictions were merged solely for sentencing. Both offenses are fourth degree felonies. *See* §§ 30-25-1(B), 30-16-10(B); *Ball v. United States*, 470 U.S. 856, 864-65 (1985) (recognizing that merging a conviction for sentencing purposes does not vacate the merged conviction or the collateral consequences that result from a conviction). Because Defendant has already been convicted of perjury, we remand solely for resentencing on that count.

**III.    CONCLUSION**

**{22}**    For the foregoing reasons, we reverse Defendant's convictions for forgery (make or alter), forgery (issue or transfer), and conspiracy to commit forgery (issue or transfer). We affirm Defendant's conviction for perjury.  We remand to the district court for resentencing consistent with this opinion.

**{23}    IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**

7