41 P.3d 944 (2002)
131 N.M. 663
2002-NMCA-027
STATE of New Mexico, Plaintiff-Appellee,
v.
Todd FIKE, Defendant-Appellant.
No. 21,723.
Court of Appeals of New Mexico.
January 16, 2002.
Certiorari Denied February 26, 2002.
*946 Patricia A. Madrid, Attorney General, Ann M. Harvey, Ass't Attorney General, Santa Fe, NM, for Appellee.
Phyllis H. Subin, Chief Public Defender, Nina Lalevic, Nancy M. Hewitt, Ass't Appellate Defenders, Santa Fe, NM, for Appellant.
Certiorari Denied, No. 27,329, February 26, 2002.

OPINION
PICKARD, Judge.
{1} Defendant appeals his convictions and sentence for false imprisonment and battery on a household member. Defendant challenges his convictions on six grounds: (1) the trial court prejudiced the jury against Defendant by repeatedly admonishing Defendant in front of the jury; (2) the trial court should have excluded, as unfairly prejudicial, rebuttal testimony regarding Defendant's altercations while incarcerated; (3) the trial court should have granted a mistrial after the victim in her testimony accused Defendant of bad acts unrelated to the charged offenses; (4) the trial court improperly excluded evidence that the victim had accused two ex-husbands of similar conduct; (5) there was insufficient evidence to convict Defendant of battery on a household member; and (6) cumulative error deprived Defendant of a fair trial. Unpersuaded by Defendant's arguments, we affirm the convictions. After reviewing the record, we find that the trial court's warnings to Defendant and instructions to the jury were not prejudicial. We address the other five issues in more summary fashion. Defendant also challenges the trial court's decision to increase his sentence by six months based on a finding of aggravating circumstances. We hold that Defendant's sentence was increased in accordance with New Mexico law.

FACTS AND PROCEEDINGS
{2} Defendant and the victim lived together in Portales. As a result of two incidents that occurred at their joint residence, Defendant was charged with two counts of false imprisonment and one count of battery on a household member. During the trial, the victim testified that Defendant kept her against her will during each incident, and that during the second incident, Defendant repeatedly grabbed her and threw her to the floor. Defendant, however, maintained that he did not commit any of the acts alleged by the victim. Defendant testified that the victim was the aggressor during each incident, he never harmed her either time, and most of her testimony was false.
{3} The jury found Defendant guilty of both charges stemming from the second incident, but not guilty of the false imprisonment charge from the first incident. The State then moved to increase Defendant's sentence by six months in accordance with NMSA 1978, § 31-18-15.1 (1993), which allows a trial court to increase a sentence for a felony conviction by one-third based on a finding of aggravating circumstances. The basic sentence for false imprisonment, a fourth degree felony, see NMSA 1978, § 30-4-3 (1963), is eighteen months, see NMSA 1978, § 31-18-15(A)(6) *947 (1999), and could therefore be increased by six months. At the time Defendant was sentenced, battery on a household member was classified as a petty misdemeanor, see NMSA 1978, § 30-3-15(B) (1995, prior to 2001 amendment), which carried a six month sentence, see NMSA 1978, § 31-19-1(B) (1984), and could not be increased. Thus, Defendant's basic sentence of twenty-four months could be increased by up to six months if the trial judge found aggravating circumstances.
{4} The trial judge found that he had sufficient basis to aggravate Defendant's sentence based on both a lack of remorse and future dangerousness to the victim. The judge stated that he saw a "consistent and persistent lack of remorse on Mr. Fike's part." He added that Defendant "says a different state of the facts occurred, and it was [the victim's] instability really at work here. So it's that lack of remorse." The judge also found, based on the psychologist's report and the testimony describing Defendant's conduct, that Defendant represented a danger to the victim and the eyewitness. The judge's comments indicated that Defendant was in denial and continued to show contempt for the victim. As a result of these findings, the judge increased Defendant's sentence by six months, for a total of thirty months.

DISCUSSION

I. Challenges to The Convictions

Possible Prejudice Created by the Trial Judge's Remarks
{5} Defendant asserts that the trial judge committed reversible error by reprimanding Defendant in front of the jury and by instructing the jury to disregard Defendant's "gratuitous remarks." During the State's cross-examination of Defendant, the proceedings were stopped four times after Defendant made remarks that went beyond the scope of the question asked and included irrelevant, prejudicial information. First, Defendant mentioned that he had been incarcerated for two years prior to trial. Next, Defendant mentioned that the victim had made conflicting statements to the police regarding the incidents that led to charges against Defendant. Third, Defendant remarked that the victim was taking "psychotropics." Finally, Defendant stated that he had difficulty hearing testimony because he suffered hearing loss after being kicked in the head during a confrontation with police.
{6} Each time this occurred, the trial judge instructed the jury to disregard Defendant's remarks and warned Defendant, in front of the jury, not to continue making such remarks. After the fourth incident, the judge also informed the jury that Defendant's testimony would be stricken if Defendant made any further gratuitous remarks. Defendant complains that the trial judge showed visible anger toward Defendant, thereby prejudicing the jury against him and diminishing Defendant's credibility. He also complains that the judge's instructions were confusing to the jury because he advised them to disregard any "gratuitous" remarks without specifying which remarks were inadmissible, thereby inviting the jury to disregard portions of Defendant's testimony that had been admitted without objection.
{7} A judge must not convey to the jury that the judge favors one side or the other. See State v. Caputo, 94 N.M. 190, 191, 608 P.2d 166, 167 (Ct.App.1980). In determining whether a judge has exceeded the bounds of acceptable conduct, the proceedings must be viewed as a whole. State v. McDonald, 1998 NMSC 034, ¶ 16, 126 N.M. 44, 966 P.2d 752. The critical inquiry is whether the trial court's behavior was so prejudicial that it denied Defendant a fair, as opposed to a perfect, trial. Id.
{8} The State discusses at length Defendant's disruptive behavior during pretrial hearings (in fact devoting eight pages of a thirty-six page brief to detailing these events) to explain why both the State and the trial judge were on guard to prevent any disruptive behavior at trial. The question before us, however, is whether the judge's reaction to Defendant's behavior during trial, in front of the jury, was so severe that it would have prejudiced the jury against Defendant. We do share, to a limited extent, some of Defendant's concerns that the trial judge, in his struggle to prevent Defendant from disrupting the proceedings, might have given jurors an unfavorable impression of Defendant. First, the judge's instruction to *948 the jury to disregard remarks made "off the cuff or at the end of a sentence or as his answer trails off" could be viewed as vague. The State objected to four specific comments by Defendant, but the judge's instruction could have conceivably invited the jury to disregard other testimony that had not drawn objection. Nor do we think it was strictly necessary to inform the jury that Defendant's testimony could be stricken if Defendant made "any additional comment like that." The jury only needed to know what testimony to consider and what testimony to disregard. The information that Defendant's testimony might be stricken could have led the jury to consider it less vital than other testimony given at trial.
{9} In addition, both the State and the trial judge might have overreacted to Defendant's statement regarding his hearing loss. That comment came as the prosecutor was struggling to get Defendant to acknowledge that his testimony contradicted testimony from the State's witnesses. The prosecutor asked Defendant if he recalled the previous day's testimony. Defendant replied that he was unable to hear large portions of the testimony. The prosecutor asked why. Defendant responded by saying that he was hard of hearing because he had been kicked in the head during a confrontation with police. This response included irrelevant information, and Defendant at that point was on notice that he should answer the specific question asked of him and include no other information. In this instance, however, Defendant's answer was a direct response to the question asked, and the trial court's characterization of responsive testimony as "gratuitous" could have confused the jury.
{10} Nonetheless, we think the trial judge handled a difficult situation as best he could, and we believe the jury understood the remarks to which the judge referred. First, even though some of the instructions were unclear, we think the jury would have understood which of Defendant's comments it was to disregard, because the State's objections immediately followed each comment, and the trial judge issued his curative instructions after sustaining those objections. Moreover, even if the jury did disregard additional testimony, it is unlikely that Defendant suffered prejudice as a result, because much of his testimony had no relevance to the two incidents that led to the charges against him. In addition, we think the judge maintained appropriate judicial decorum throughout the proceedings. Defendant asserts that "[b]y the time the court excused the jury for its final reprimand, it was clear that the judge was angry with Mr. Fike." On a cold record, we cannot evaluate whether or not the judge appeared angry. See Bendorf v. Volkswagenwerk Aktiengeselischaft, 90 N.M. 414, 418, 564 P.2d 619, 623 (Ct.App.1977) (recognizing difficulty of evaluating judge's demeanor upon appellate review). After listening to tapes of the proceedings, however, we observe that the judge maintained a respectful and polite tone each time he addressed Defendant. Though the judge's tone became more stern with each warning issued to Defendant, it was appropriate for the judge to issue stern warnings in order to keep the situation from getting further out of hand.
{11} We also note that this Defendant created this situation. Defendant legitimately seemed to have some trouble differentiating relevant from irrelevant information. Nonetheless, he made little effort to answer only the question asked, continually including information designed to elicit sympathy for himself or animus toward the victim. The judge needed to control the course of the trial and prevent the jury from hearing more and more irrelevant, prejudicial testimony. The judge was also trying to avoid a mistrial of Defendant's own making. He did so by asking Defendant to refrain from blurting out extraneous information. If Defendant had complied with the judge's initial requests, additional warnings would not have been necessary.
{12} Finally, we note that nothing the judge said in his instructions or in his warnings to Defendant reflected on Defendant's truthfulness. The judge instructed the jury that Defendant's comments were irrelevant. We do not think this would create the impression that Defendant was not being truthful. We think the jury was free to make up its own mind as to Defendant's credibility.
{13} Ultimately, we do not think that Defendant met his burden to show the trial judge's comments created prejudice. The *949 trial judge needed to balance Defendant's right to a fair trial against the need for efficient proceedings in which the jury evaluates only relevant evidence. We are not sure what additional steps the trial judge could have taken to protect Defendant's rights when Defendant was unwilling to comply with the judge's clear instructions to answer only the question asked and to refrain from including additional information.

Evidentiary Rulings
{14} Defendant asserts that the trial court erred in allowing the State to rebut his impossibility defense with testimony about altercations that took place while Defendant was incarcerated prior to trial. Defendant testified that he could not have lifted the victim in the air, as she claimed during her testimony, because he cannot lift more than twenty-five pounds from a standing position without forcing his limb into his prosthetic leg. The rebuttal witness, a sheriff's deputy, testified that he saw Defendant lift a corrections officer into the air during a confrontation and that on another occasion it took three officers to subdue Defendant. Defendant first argues that this was improper rebuttal testimony because Defendant was seated during the encounter with the corrections officer, and therefore the testimony did not serve to rebut Defendant's claim that he was unable to lift heavy weights while standing. Defendant also argues that the testimony was inadmissible under the Rules of Evidence because the prejudicial impact of introducing evidence about other violent encounters outweighed any probative value. See Rule 11-403 NMRA 2001.
{15} We review the admission of evidence under an abuse of discretion standard. State v. Allison, 2000 NMSC 027, ¶ 31, 129 N.M. 566, 11 P.3d 141. The trial court saw the witness's testimony as "classic rebuttal." We agree. Once Defendant testified that he was incapable of performing the acts alleged, the State was entitled to explore Defendant's physical capabilities, particularly the strength he exhibited while engaged in physical struggles. Defendant was free to argue, and did argue, that Defendant's capabilities varied depending on whether he was seated or standing. The trial court was within its discretion, however, to admit the evidence as relevant and allow the jury to decide whether Defendant had the capability to perform the acts alleged. As to the issue of prejudice, the trial court was careful to limit the prosecutor's examination to exclude as much prejudicial information as possible. The trial court did not abuse its discretion in allowing the rebuttal testimony.
{16} Defendant also asserts that the trial judge should have allowed him to introduce evidence that the victim had accused each of her two ex-husbands of similar acts. Defendant argues that he was entitled to question the victim about these incidents under Rule 11-608(B) NMRA 2001, which allows parties to inquire about a witness's specific instances of conduct that are probative of truthfulness or untruthfulness on cross-examination. The rule, however, permits inquiry "in the discretion of the court." Id. The trial court found that Defendant had no good faith basis for claiming that the victim had ever made such allegations. Defense counsel conceded that he had no information to support the claim. Without some corroborating evidence, the trial court was within its discretion in refusing to allow the questioning.

Motion for Mistrial
{17} Defendant complains that the trial court should have granted his motion for a mistrial after the victim testified that she believed Defendant was using her social security number without authorization. Defense counsel did not object right away, but moved for a mistrial during the next break, after the victim was through testifying. The trial court agreed that this testimony was irrelevant and constituted inadmissible character evidence, but refused to grant a mistrial, instead instructing the jury to disregard the evidence.
{18} Like evidentiary rulings, the decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion. McDonald, 1998 NMSC 034, ¶ 26, 126 N.M. 44, 966 P.2d 752. Prejudice caused by an unsolicited remark can usually be dissipated by a curative instruction. See State v. Wittgenstein, 119 *950 N.M. 565, 569, 893 P.2d 461, 465 (Ct.App. 1995). Although the trial court's instruction came several hours after the victim's testimony, the court's instruction was sufficient to cure any prejudice caused by the remarks.

Insufficient Evidence
{19} Defendant contends that there was insufficient evidence to convict him of battery of a household member, arguing that the victim did not meet the statutory definition of household member. When reviewing a factual finding on appeal, we determine whether substantial evidence exists to support a verdict of guilt beyond a reasonable doubt with respect to every element, viewing the evidence in the light most favorable to supporting the verdict and indulging all permissible inferences in favor of upholding the verdict. State v. Apodaca, 118 N.M. 762, 765-66, 887 P.2d 756, 759-60 (1994). The statutory definition of household member includes "a person with whom a person has had a continuing personal relationship." NMSA 1978, § 30-3-11 (1995). Both the victim and Defendant testified that they lived together in New Mexico for several weeks before the incidents occurred. This evidence alone was sufficient to establish a continuing personal relationship. In fact, there was no basis for the jury to conclude otherwise. To the extent that Defendant disputed the victim's testimony, he claimed that the relationship began earlier and was more intimate than she had admitted. Defendant's claim on this point is without merit.

Cumulative Error
{20} Defendant argues that cumulative error deprived him of a fair trial. However, we have not found that the trial court committed any of the errors claimed by Defendant. Where there is no error, there can be no cumulative error. State v. Morales, 2000 NMCA 046, ¶ 18, 129 N.M. 141, 2 P.3d 878.
{21} Defendant's convictions are affirmed.

II. Challenges to the Aggravated Sentence
{22} Defendant challenges the trial court's decision to increase his sentence on two grounds. First, Defendant argues that, pursuant to Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the question of whether aggravating factors existed should have been submitted to the jury and determined beyond a reasonable doubt. We already considered this question in State v. Wilson, 2001 NMCA 032, ¶¶ 13, 29, 130 N.M. 319, 24 P.3d 351, and held that it was constitutionally permissible for our judges to either increase or decrease a defendant's sentence within the range provided in Section 31-18-15.1. Second, Defendant argues that the trial judge's use of lack of remorse as an aggravating circumstance violated his Fifth Amendment right against self incrimination because he could not express remorse without admitting his culpability.
{23} The imposition of a harsher sentence based solely on a defendant's refusal to admit guilt violates the defendant's Fifth Amendment right against self incrimination. See State v. James, 109 N.M. 278, 284, 784 P.2d 1021, 1027 (Ct.App.1989). Our Supreme Court recognized the "potential ... for a good deal of mischief" in enhancing a sentence based on a defendant's lack of remorse. Swafford v. State, 112 N.M. 3, 17, 810 P.2d 1223, 1237 (1991). The Court observed that "remorse may be equated with a defendant's decision to plead guilty and, accordingly, a lack of remorse might be equated with a decision to proceed to trial. Such an equation raises serious concerns." Id. Nonetheless, the Swafford Court held that, in appropriate circumstances, a trial judge can permissibly consider the presence or absence of remorse when sentencing a defendant. Id.
{24} After Swafford, we upheld a trial judge's decision to increase a defendant's sentence based on lack of remorse where the trial judge found "a pattern [ad]efendant had exhibited over the course of several years for not taking responsibility for his own actions and showing little remorse for the effect of his actions on others." State v. Wilson, 117 N.M. 11, 20, 868 P.2d 656, 665 (Ct.App.1993) (hereinafter Wilson I). We were also recently asked to address the very issue Defendant now raises in Wilson, 2001 NMCA 032, ¶ 30, 130 N.M. 319, 24 P.3d 351 (hereinafter Wilson II). We did not reach the issue in Wilson II because that defendant had not properly preserved the issue below. Id. *951 ¶¶ 30-32. Nonetheless, we noted that lack of remorse can be a valid aggravating factor, even when a defendant maintains her innocence. See id. ¶ 33. In that case, the defendant was convicted of child abuse resulting in death. Id. ¶ 2. We observed that the defendant, despite acknowledging some role in her child's death, never took responsibility for her actions. Id. ¶ 33. In those particular circumstances, we noted, the defendant could have assumed responsibility for her role without recanting her defense theories. Id. As a result, we indicated that the trial judge was entitled to rely on Defendant's inability to accept responsibility for her actions as a basis for aggravating her sentence. Id.
{25} The judge here indicated that his finding of lack of remorse was based in part on the fact that Defendant "says a different state of the facts occurred." If that had been the only basis for the judge's findings, then we would have been obligated to reverse the aggravated portion of the sentence. The judge here, however, made additional, specific findings relating to Defendant's lack of remorse based on the attitude Defendant displayed throughout the proceedings and a psychological evaluation of Defendant performed while Defendant was incarcerated. We think these findings established a constitutionally permissible basis for increasing Defendant's sentence.
{26} First, the trial judge based his finding of lack of remorse on Defendant's insistence that the victim instigated each incident. Throughout the entire process, from pretrial hearings to sentencing, Defendant vehemently asserted that victim made everything up because she was bipolar. Defendant also violated a court order by visiting the victim's apartment. Just as the defendant in Wilson II could have accepted some responsibility without admitting guilt, Defendant could have maintained his innocence without continually expressing hostility toward the victim, and in fact could have expressed sympathy for her without admitting that he was guilty of battery or false imprisonment. Second, Defendant, like the defendant in Wilson I, displayed a pattern of failing to acknowledge responsibility for his actions and the harm he caused others. See Wilson I, 117 N.M. at 20, 868 P.2d at 665. The judge observed Defendant deny responsibility for multiple incidents that occurred while he was incarcerated and successive disagreements with assigned counsel. The forensic psychologist who examined Defendant observed that Defendant had a pattern of deflecting responsibility for any wrongdoing. Based on these findings, we think the trial judge had a sufficient basis to increase Defendant's sentence.
{27} We do note that the trial court could have paid better heed to Swafford's instruction that a sentence increase based on lack of remorse should be supported by specific findings. See Swafford, 112 N.M. at 17, 810 P.2d at 1237. The State, in arguing that Defendant lacked remorse, discussed Defendant's violation of the court order, his continuing misconduct while in detention, his behavior during trial, and his "longstanding pattern of... oppositional defiant behavior," as well as the findings in the psychologist's report. It is not clear to what extent the trial court relied on these factors, if at all, even though each of these factors seems to lend support to the trial court's ultimate finding. Because Defendant's constitutional rights were implicated, we suggest that trial courts take more time in the future to more clearly explain the basis for their rulings.
{28} The trial court also found that Defendant posed a danger to the victim and an eyewitness who testified at trial. This finding alone could have been a sufficient basis for increasing Defendant's sentence. Citing to Swafford, Defendant argues that, where the trial judge relies on two different sentencing factors, and one may be impermissible, the appellate court should reverse for re-sentencing. See id. at 17 n. 11, 810 P.2d at 1237 n. 11; see also James, 109 N.M. at 284, 784 P.2d at 1027. In those cases, however, one of the factors was clearly impermissible. We have determined that lack of remorse was a permissible sentencing factor in this case, and therefore we do not face the same concern. See State v. Castillo-Sanchez, 1999 NMCA 085, ¶ 28, 127 N.M. 540, 984 P.2d 787 (holding that a sentencing decision will be affirmed if challenged factor is permissible and other factors are not challenged). Even if we had doubts about the appropriateness of the trial court's use of lack of remorse as a *952 sentencing factor, remand would not be necessary in this case. In this particular situation, the trial court's findings that Defendant lacked remorse only bolstered the finding of future dangerousness.

CONCLUSION
{29} For the foregoing reasons, Defendants convictions and sentence are affirmed.
{30} IT IS SO ORDERED.
We concur: RICHARD C. BOSSON, Chief Judge and MICHAEL D. BUSTAMANTE, Judge.