2005-NMCA-005

104 P.3d 540

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**John MONTOYA, Jr., Defendant– Appellant.**

**No. 24,192.**

Court of Appeals of New Mexico.

Nov. 9, 2004.

Certiorari Granted, No. 28,972, Jan. 4, 2005.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM for Appellee.

John B. Bigelow, Chief Public Defender, Sue A. Herrmann, Appellate Defender, Santa Fe, NM for Appellant.

## OPINION

FRY, Judge.

{1} In *State v. Stein*, 1999–NMCA–065, 127 N.M. 362, 981 P.2d 295, we examined the definition of "household member" in the Crimes Against Household Members Act, NMSA 1978, §§ 30–3–10 to –16 (1995, prior to 2001 amendment) (CAHMA), and concluded that the crime of "battery against a household member does not encompass battery against one's own child." *Stein*, 1999–NMCA–065, ¶ 19, 127 N.M. 362, 981 P.2d 295. The victim in *Stein*, however, was the 13–year–old daughter of the accused. *Id.* ¶ 4. Today we must decide whether a defendant who has battered his adult son may be convicted of battery against a household member. We conclude that he may on the ground that the exclusion recognized in *Stein* applies only to the minor children of the perpetrator.

## BACKGROUND

{2} Following a scuffle with Victim, Defendant was charged with battery against a household member. Victim was the 28–year–old son of Defendant and had been estranged from his father for several years. On Father's Day, Victim was out driving with his wife and their two children when they encountered Defendant riding his bicycle. Conflicting versions of the events that followed were presented at trial. Victim and his wife both testified that Defendant rode in front of their car and flipped them off. They testified that when Victim asked Defendant if there was something wrong with his finger, Defendant got off his bike, approached the car, swore at Victim in Spanish, choked him, and threw coins at him. They also testified that when Victim got out of the car, Defendant punched Victim twice in the face before Victim retaliated with blows of his own. Defendant, on the other hand, testified that Victim called Defendant a "bum" and a "hobo" and threatened to run over him with his car. According to Defendant, when Victim got out of his car, he struck Defendant, and Defendant fought back only in self-defense. Rejecting Defendant's version of the events, the district court found Defendant guilty of battery against a household member.

## DISCUSSION

### Finality

{3} Preliminarily, we address whether the district court's order on trial de novo is a final, appealable order. Originally, Defendant was convicted by a jury in magistrate court of battery against a household member. He was sentenced by the magistrate court to 364 days in jail with all 364 days suspended. Defendant then appealed his conviction to the district court where a trial de novo was held. Following a bench trial, the district court entered an order finding Defendant guilty of battery against a household member and remanding to the magistrate court "for imposition of the original sentence."

{4} As the State correctly notes, when a defendant is convicted in a trial de novo on appeal from magistrate court, the district court is required to impose a sentence prior to remanding the case to the magistrate court for enforcement of the district court's judgment. NMSA 1978, § 35–13–2(C) (1996). When the district court enters an order of remand to the magistrate court that does not resolve the issue of sentencing, this Court has held that the order is not final and appealable. *State v. Cordova*, 114 N.M. 22, 23, 833 P.2d 1203, 1204 (Ct.App.1992); *see also State v. Garcia*, 99 N.M. 466, 471, 659 P.2d 918, 923 (Ct.App.1983) (recognizing that a final judgment in a criminal case either adjudicates the defendant guilty *and imposes, suspends, or defers sentence* or dismisses the charges).

{5} Here, the district court did not impose a sentence but remanded to the magistrate court "for imposition of the original sentence." As the State acknowledges, on remand, the magistrate court will have no discretion to revisit the issue of sentencing, but must simply enter the sentence previously imposed. *See State v. Gage*, 2002–NMCA–018, ¶ 20, 131 N.M. 581, 40 P.3d 1025 (explaining that the magistrate court has no jurisdiction or authority to exceed the man-

date of the district court); *see also State v. Celusniak,* 2004–NMCA–070, ¶ 9, 135 N.M. 728, 93 P.3d 10 ("On remand, the magistrate court proceeds with the case in keeping with the mandate of the district court."). Therefore, because the magistrate court will lack authority to make any substantive determination regarding Defendant's sentence, and will be limited to the purely ministerial act of imposing the original sentence, we conclude that the order on trial de novo is final for purposes of appeal. *Cf. State v. Candy L.,* 2003–NMCA–109, ¶ 6, 134 N.M. 213, 75 P.3d 429 (dismissing appeal as premature where "we are not merely awaiting a ministerial act, but rather a substantive determination" of the child's restitution plan); *State v. Ahasteen,* 1998–NMCA–158, ¶ 13, 126 N.M. 238, 968 P.2d 328 (applying the doctrine of practical finality to permit appeal from an order of remand).

### Preservation

■ {6} Next we address the issue of preservation raised by the State. According to the State, Defendant failed to preserve his argument that Victim is not a "household member" within the meaning of the CAHMA, and thus cannot raise the issue for the first time on appeal. In particular, the State points out that Defendant did not argue that his "child" or "adult son" cannot be considered a "family member" or "relative" under Section 30–3–11, and did not refer to *Stein* in the district court. We conclude that the issue of whether Victim meets the statutory definition of "household member" was adequately preserved.

■ {7} "The New Mexico Rules of Appellate Procedure require a ruling or decision by the district court to be 'fairly invoked' in order to preserve a question for review." *State v. Jason F.,* 1998–NMSC–010, ¶ 9, 125 N.M. 111, 957 P.2d 1145; Rule 12–216(A) NMRA. The primary purposes of the preservation requirement are "(1) to alert the trial court to a claim of error so that it has an opportunity to correct any mistake, and (2) to give the opposing party a fair opportunity to respond and show why the court should rule against the objector." *State v. Gomez,* 1997–NMSC–006, ¶ 29, 122 N.M. 777, 932 P.2d 1. As an appellate court, we bear these dual purposes in mind when we apply the preservation requirement. *Gracia v. Bittner,* 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App. 1995).

{8} During closing argument, the prosecutor recited the essential elements of battery against a household member, including that Victim was a "household member." The prosecutor then argued that there was evidence to support each element of the offense beyond a reasonable doubt, and that Defendant was the first aggressor. Defense counsel disagreed, arguing that the elements of battery on a household member had not been met, and that Defendant acted in self-defense. Defense counsel's objection, while broad and nebulous, appears to have alerted the district court to the issue of whether the definition of "household member" was met because it prompted the court to ask the prosecutor for the statutory definition of the term following the defense's closing argument. In response to the district court's inquiry, the prosecutor, during rebuttal, recited the applicable statutory definition and argued that the definition was met under the facts of this case. Specifically, she stated that "co-habitation is not necessary" for Victim "to be deemed a household member" and that the definition was met because Defendant "is a parent" of Victim. After reviewing the evidence in chambers, the district court returned on the record to announce its finding that Defendant was guilty of battery against a household member.

{9} Based on the foregoing facts, we conclude that the issue of whether Victim falls within the statutory definition of "household member" was fairly presented below. Despite the ambiguity of defense counsel's objection, the district court was alerted to the question of whether Victim meets the definition of "household member," the State had an opportunity to respond and argue evidence relating to the issue, and the district court ruled on the issue by finding evidence to support each element of the offense beyond a reasonable doubt. *See Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) (discussing that although appellants' "arguments were not a model of

clarity, and certainly could have been made with more specificity, they were sufficient to alert the trial court and opposing counsel to the substance of the argument being made"); *State v. Griffin*, 2002–NMCA–051, ¶ 6, 132 N.M. 195, 46 P.3d 102 (concluding that jury instruction issue was preserved where the district court understood the defendant's argument and made a well-informed ruling on the question); *cf. State v. Woodruff*, 1997–NMSC–061, ¶ 21, 124 N.M. 388, 951 P.2d 605 (recognizing that the district court may itself fairly invoke a ruling on an issue).

■ {10} Although no mention of the *Stein* case was made below, the issue of whether Victim was a "household member" as defined by the applicable statute, the same question addressed in *Stein*, appears to have been raised and thus was adequately preserved. *See Gomez*, 1997–NMSC–006, ¶ 30, 122 N.M. 777, 932 P.2d 1 (determining that a party's failure to cite to specific cases in support of a legal principle was not fatal "so long as the party has asserted the principle recognized in the cases and has developed the facts adequately to give the opposing party an opportunity to respond and to give the court an opportunity to rule"). "The rules that govern the preservation of error for appellate review are not an end in themselves, rather they are instruments for doing justice." *Garcia*, 119 N.M. at 541, 893 P.2d at 437. Because we conclude that the preservation requirement was met in this case, we need not consider whether to review the issue on appeal for fundamental error. *Id.*

### Standard of Review

■ {11} Defendant argues that his conviction must be reversed because the evidence at trial cannot support a finding that Victim was a "household member" within the meaning of Section 30–3–11. "Although framed as a challenge to the sufficiency of evidence, Defendant's argument requires us to engage in statutory interpretation to determine whether the facts of this case, when viewed in the light most favorable to the verdict, are legally sufficient to sustain a conviction." *State v. Barragan*, 2001–NMCA–086, ¶ 24, 131 N.M. 281, 34 P.3d 1157. Thus, underlying issues of statutory interpretation are questions of law reviewed de novo. *Id.*

### Statutory Definition of Household Member and *Stein*

■ {12} Under the CAHMA, battery against a household member "consists of the unlawful, intentional touching or application of force to the person of a household member, when done in a rude, insolent or angry manner." § 30–3–15(A). "household member" is defined under the CAHMA as:

> a spouse, former spouse or family member, including a relative, parent, present or former step-parent, present or former in-law, a co-parent of a child or a person with whom a person has had a continuing personal relationship. Cohabitation is not necessary to be deemed a household member for the purposes of the Crimes Against Household Members Act.

§ 30–3–11.

{13} In *Stein*, this Court concluded that the definition of "household member" in the CAHMA does not include the "child" of the accused. *Stein*, 1999–NMCA–065, ¶ 19, 127 N.M. 362, 981 P.2d 295. Defendant argues that because he was charged with battering his son, his conviction must be reversed based on this Court's holding in *Stein*. Relying on *Stein* and the omission of the term "child" from the statutory definition of "household member," Defendant urges us to apply the statute as written. He also argues that words should not be read into the statute and that if the legislature had intended to include minor or adult children in the definition of "household member," it would have specifically done so. We conclude that Defendant's reliance on *Stein* is misplaced and that the holding of that case is limited to the minor children of the accused.

{14} Initially, we address Defendant's argument favoring an application of the plain meaning rule of statutory construction. *See State v. Jonathan M.*, 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). We find Defendant's argument unavailing because a plain reading of the applicable statute supports a conclusion that the definition of "household member" includes adult children of the accused.

See § 30–3–11; *State v. Davis*, 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (explaining that in ascertaining legislative intent we start by looking at the words chosen by the legislature). As we observed in *Stein:* "On its face, the statutory definition of 'household member' would appear to encompass a child of the accused. The definition includes 'a family member,' 'a relative,' and 'a person with whom a person has had a continuing personal relationship.' " *Stein*, 1999–NMCA–065, ¶ 11, 127 N.M. 362, 981 P.2d 295. We find other indications that the definition of "household member" is to be read broadly. The victim need not cohabit or reside with the defendant in order to be a household member. § 30–3–11. Nor is it necessary for the victim to be related to the defendant; "a continuing personal relationship" is sufficient. *Id.; cf. State v. Fike*, 2002–NMCA–027, ¶ 19, 131 N.M. 676, 41 P.3d 944 (concluding that a continuing personal relationship was established where both victim and defendant lived together for several weeks before the incidents in question occurred). Thus, under a plain reading of the broadly drawn statute, Victim would certainly meet the statutory definition of "household member" since he is a "family member" and "relative" of Defendant.

{15} In *Stein*, however, this Court looked beyond the plain language of Section 30–3–11 because a closer examination of the statute and its background revealed "that the legislative intent was to exclude children." *Stein*, 1999–NMCA–065, ¶¶ 11–17, 127 N.M. 362, 981 P.2d 295; *see State v. Rivera*, 2004–NMSC–001, ¶ 13, 134 N.M. 768, 82 P.3d 939 (explaining that "we have not relied upon the literal meaning of a statute when such an application would be absurd, unreasonable, or otherwise inappropriate"); *Davis*, 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064. We observed that while the definitions of "household member" in the Harassment and Stalking Act, the Criminal Procedure Act, and the Family Violence Protection Act, specifically include the term "child," the definition in the CAHMA omits the term. *Stein*, 1999–NMCA–065, ¶ 14, 127 N.M. 362, 981 P.2d 295. In all other respects, however, the language in the statutory definitions is identical. *Id.* ¶ 16; *see also State v. Trujillo*, 1999–NMCA–003, ¶ 8, 126 N.M. 603, 973 P.2d 855. In addition, an examination of the legislative history of Section 30–3–11 revealed that the definition of "household member" originally included the word "child," but that the word was later deleted by amendment and never reinserted. *Stein*, 1999–NMCA–065, ¶¶ 16–17, 127 N.M. 362, 981 P.2d 295. Concluding that the omission of "child" from Section 30–3–11 was "substantive and purposeful," *id.* ¶ 17, this Court determined that the legislature intended to "exclude children" of the accused from the statutory definition. *Id.* ¶ 11.

{16} For several reasons, we conclude that the exclusion recognized in *Stein* applies only to the minor children of the accused. First, the victim in *Stein* was the 13–year–old daughter of the defendant. *Id.* ¶ 4. Second, because the victim was a minor, the contentions of the defendant and the resulting holding of this Court were necessarily limited to minor children of the accused. *See id.* ¶ 10. Third, in speculating why "child" was omitted from the statutory definition of "household member," this Court identified two reasons: (1) conflict with the child abuse statute, and (2) the limited right of parents to impose corporal punishment on their children. *Id.* ¶ 19. Both rationales apply only to minor children of the perpetrator.

{17} In addition, as the State points out, "child" is defined in the child abuse statute, and elsewhere, as a person under the age of eighteen. NMSA 1978, § 30–6–1(A)(1) (2004) (child abuse statute); NMSA 1978, § 32A–1–4(B) (2003) (Children's Code). We believe that by omitting the word "child" from the statutory definition of "household member," the legislature must have intended that only children under the age of eighteen be excluded from the definition. *See State ex rel. Human Servs. Dep't (In re Kira M.)*, 118 N.M. 563, 569, 883 P.2d 149, 155 (1994) ("We presume the legislature is aware of existing law when it enacts legislation."); *accord State v. Smith*, 2004–NMCA–026, ¶ 15, 135 N.M. 162, 85 P.3d 804.

{18} Accordingly, today we reaffirm our holding in *Stein*, clarifying that only minor children of the accused are excluded from the

definition of "household member." *Id.* ¶ 19. We note that since our decision in *Stein,* the statutory definition of "household member" has not been changed. The legislature has made only one amendment to the CAHMA, increasing the penalty of battery against a household member from petty misdemeanor to misdemeanor, apparently responding to the serious and pervasive nature of the problem of domestic violence. *See* § 30–3–15(B).

{19} Having determined that only minor children of the accused are excluded from the definition of "household member," and that the definition of "household member" is otherwise broad in scope, we conclude that Victim, as the adult son of Defendant, is a relative of Defendant and therefore fits within the definition of "family member" and thus a "household member" within the meaning of the statute. *See* § 30–3–11. If construed otherwise, the statute would have the absurd result of shielding a parent who has committed battery against an adult child from prosecution under Section 30–3–15, even though the victim is a "family member" or "relative," while permitting an adult child who has battered a parent to be prosecuted under the statute. *See State v. Pearson,* 2000–NMCA–102, ¶ 5, 129 N.M. 762, 13 P.3d 980 ("Fundamentally, our role is to effectuate the [l]egislature's intent as evidenced by the statute's plain terms and avoid strained or absurd constructions.").

{20} Defendant argues that because he was estranged from Victim, there was no "continuing personal relationship," and thus, the State cannot rely on that portion of the statute that defines "household member" as "a person with whom a person has had a continuing personal relationship." *See* § 30–3–11. However, because we determine that Victim is a "relative" under Section 30–3–11, the State was not required to prove that Defendant had a continuing personal relationship with Victim. Under the statute, "household member" is defined, in part, as a family member, which term may include a person with whom a person has had a continuing personal relationship, *or* a number of other relationships, such as a relative. *See State v. Ruffins,* 109 N.M. 668, 671, 789 P.2d 616, 619 (1990) ("The word 'or' is given a

disjunctive meaning unless the context of the statute demands otherwise." (internal quotation marks and citation omitted)). Moreover, insofar as Defendant contends that an estranged family member cannot be a "household member" under the CAHMA, we reject this contention as without merit since Section 30–3–11 expressly includes former spouses, step-parents, or in-laws, who may or may not have had a continuing personal relationship with the accused at the time in question.

[8] {21} Finally, Defendant argues that the statutory definition of "household member" must be strictly construed in his favor under the rule of lenity. *See State v. Allen,* 77 N.M. 433, 434, 423 P.2d 867, 868 (1967). However, the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute." *State v. Rowell,* 121 N.M. 111, 116, 908 P.2d 1379, 1384 (1995) (emphasis, internal quotation marks, and citation omitted). Because we find that no such doubt persists after revisiting *Stein* and applying rules of statutory construction, we reject Defendant's argument urging us to apply the rule of lenity. We also need not address the State's arguments concerning the appropriate remedy in the event of reversal, and remand to the district court.

## CONCLUSION

{22} Based on the foregoing discussion, we affirm Defendant's conviction.

{23} **IT IS SO ORDERED.**

JONATHAN B. SUTIN, Judge (specially concurring).

RODERICK T. KENNEDY, Judge (specially concurring).

SUTIN, Judge (specially concurring).

{24} NMSA 1978, § 30–3–11 (1995) should be strictly construed. "[P]enal statutes must be strictly construed, and the definition of crimes therein contained is not to be broadened by intendment." *State v. Allen,* 77 N.M. 433, 434, 423 P.2d 867, 868 (1967). Further, lenity applies when "reasonable

doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies." *State v. Rowell,* 121 N.M. 111, 116, 908 P.2d 1379, 1384 (1995) (internal quotation marks and citation omitted).

{25} The Crimes Against Household Members Act was enacted in response to the Legislature's concern about domestic violence. *State v. Stein,* 1999–NMCA–065, ¶ 2, 127 N.M. 362, 981 P.2d 295. It was aimed at household violence. *Id. Stein* raised some doubt as to the scope of Section 30–3–11. Furthermore, the term "family member," without any limitation on how far "family" is intended to extend, and the analogical term "relative," create a conceivably limitless unit. Section 30–3–11 should be strictly construed in favor of a defendant, particularly given the connotations of *domestic* and *household,* and given *Stein's* restrictive reading of the statute in regard to children. Nevertheless, even applying strict construction and considering lenity, I concur in the majority opinion.

{26} Guidelines as to the meaning of "family member" are provided by the inclusionary terms that follow it in the statute. There appears to be no evidence regarding a continuing personal relationship between Defendant and Joseph. Section 30–3–11's restrictive definitional term "family member," and inclusionary term "relative," should be the only definitional terms applicable in the present case. Joseph, however estranged, was Defendant's son and thus came from the immediate family; and, of course, Joseph was a relative. It is reasonable to bring a victim's adult son within the meaning of "family member."

{27} I nevertheless want to express my concerns about the statute's scope. The statute neither requires the battery to have taken place in the home or to have been committed against a person residing in the home. The statute automatically covers any person who batters any relative whatsoever no matter the ages, sexes, emancipation, alienation, estrangement, and other circumstances such as chance meeting. Further, the statute automatically includes any person with whom the victim may have at some distant time in the past had a continuing personal relationship. Despite the word "family" in "family member," the term "family member" could be interpreted to automatically include any person, whether a relative or not, with whom the victim has had at some time a continuing personal relationship.

{28} Many examples can be recited that would seem to make application of the statute virtually absurd without evidence beyond that of the status of relative. An eighty-year-old grandaunt or granduncle can be convicted of battery or aggravated battery under NMSA 1978, §§ 30–3–15 (2001), –16 (1995), for hitting her or his thirty-five-year-old nephew or niece once or twice removed with no further evidence than the elements of simple battery and proof that the victim was a relative. We must speculate that underlying its enactment of the Crimes Against Household Members Act the Legislature intended to establish a very broad policy that, no matter how diluted, attenuated, transient, and generally non-discordant the relationship may be, it was very important to society to provide every member of a virtually limitless family unit (except of course minor children) added protection from every other member of that unit.

{29} Once a battery against a household member takes place, the statute makes the relative-actor criminally liable under Section 30–3–15(B), increasing the penalty from the petty misdemeanor of simple battery under NMSA 1978, § 30–3–4 (1963), to a misdemeanor. In this sense, the statute is or approaches a strict liability statute, because once a simple battery is proved, the sole question for the jury is whether it believes the defendant was a relative. *See State v. Baca,* 114 N.M. 668, 674, 845 P.2d 762, 768 (1992) (referring to crimes "closely approaching" or constituting "near" strict liability crimes); *State v. Anderson,* 2001–NMCA–027, ¶¶ 26–34, 130 N.M. 295, 24 P.3d 327 (discussing strict liability for aggravation of a crime by the mere possession of an object or instrument that, if used as a weapon, could inflict serious injury). As such, perhaps it can be presumed to have been intended to afford a high level of protection and should be construed in a manner so that such pro-

tection is not vitiated. *See Baca*, 114 N.M. at 674, 845 P.2d at 768.

{30} Unquestionably expanded way beyond what the public normally thinks of as domestic or household violence against household members, the Legislature apparently felt that as a matter of our social welfare there should be no physical squabbling within this virtually limitless family unit. *See State v. Rios*, 1999–NMCA–069, ¶ 5, 127 N.M. 334, 980 P.2d 1068 (stating the legislative interest in establishing a strict liability crime to presumably be "that the public interest in the matter is so compelling or that the potential for harm is so great, that public interests override individual interests" (internal quotation marks and citation omitted)). I am not so sure, however, that the statute should be read so broadly. *See State v. Torres*, 2003–NMCA–101, ¶ 12, 134 N.M. 194, 75 P.3d 410 (noting that policy considerations may require the conclusion that "some of the potential victims within the purview of [a strict liability] statute do not require the protection of strict liability").

{31} Defendant has raised *no constitutional issue*. Absent a constitutional defect in the statute, I hesitatingly defer to possible legislative intent and concern, notwithstanding my skepticism that the Legislature actually intended Section 30–3–11 to reach an estranged adult son under the circumstances of this case, because it is conceivable that the Legislature intended protection where the victim, even though an adult son, is a product of the nuclear family unit, a unit in which psychological sores and scars and abuse are often in hidden closets, and as to which the Legislature may well have wanted to provide added protection.

KENNEDY, Judge (specially concurring).

{32} I concur with Judge Sutin's assessment of the utilitarian conundrum that produces a hair-trigger for imposing "near strict liability" based on no genuinely functional distinction between this victim and any other person. Then too, I utterly concur with Judge Fry that we must take the statute as we find it, and that as we find it here, it is clear and lenity does not apply. Besides, it was the former familial relationship out of which the fight here was born. Much consideration in cases like these also rests with the prosecutor, in whose discretion, following the dictates of justice, rests the power of obsta principiis in the face of a temptation to upgrade a simple brawl to a charge rooted in a legislative desire to protect families.