This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                          **NO. 33,402**

**MARVIN MAESTAS,**

Defendant-Appellee.


**APPEAL FROM THE DISTRICT COURT OF MORA COUNTY**
**Matthew Sandoval, District Judge**

Hector H. Balderas, Attorney General
M. Anne Kelly, Assistant Attorney General
Santa Fe, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellee


## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

**{1}** The State appeals an order of the district court granting Defendant Marvin Maestas's pretrial motion to suppress evidence pursuant to Article II, Section 10 of the New Mexico Constitution. *See* NMSA 1978, § 39-3-3(B)(2) (1972) (providing for appeals by the State "from a decision or order of a district court suppressing or excluding evidence"). On appeal, however, the State is asserting an argument that was not presented to the district court. Because that argument was not preserved below, we affirm the district court's order granting Defendant's motion to suppress.

**BACKGROUND**

**{2}** The record below establishes that on the evening of Defendant's arrest, two Mora County sheriff's deputies noticed a car with tinted windows in a city park. Defendant was seated in the passenger's side of that car, which was parked legally when the deputies noticed it. Apparently believing that the park was closed, the deputies pulled their marked SUV into the park and then approached the car on foot from both sides. When Deputy Jose Gutierrez reached the passenger's side of the car, he knocked on the tinted window of the car and asked the passenger to roll down the window. When Defendant complied with that request, Deputy Gutierrez smelled marijuana, opened the door of the car, and asked Defendant to step out. Ultimately, both the driver of the car and Defendant were arrested, and Defendant was subsequently charged with possession of a firearm by a felon, possession of drug paraphernalia, and possession of marijuana. Defendant was not charged with violating

any ordinance that would have prohibited his presence in the park and Deputy Gutierrez testified at a suppression hearing that he was unaware of any such ordinance. Ultimately, the parties agree that the deputies did not have any reasonable suspicion that Defendant was engaged in any criminal activity until he rolled down the car window and the smell of marijuana emerged from the car. Thus, the issue in this case centers upon whether the deputies' conduct leading up to that moment was proper in the absence of any reasonable suspicion.

{3}     Following Defendant's motion to suppress evidence, the State filed a written response and the district court conducted a hearing. The State's response pointed out that, because Defendant was seated in a parked car, the deputies did not conduct a traffic stop. Based upon that fact, the State asserted that the deputies "approached . . . Defendant's vehicle in their capacity as community caretakers." Relying upon that assertion that "the deputies initially merely approached . . . Defendant in their capacity as community caretakers," the State argued that reasonable suspicion was unnecessary, since "[l]aw enforcement officers are not required to have reasonable suspicion to render aid to [a] motorist with a mechanical breakdown or in medical need."

{4}     At the hearing on Defendant's motion, however, the State offered no evidence that the deputies had any reason to suspect that anyone was in need of mechanical or medical assistance. Based upon that lack of evidence, Defendant argued that the

3

community caretaker doctrine was inapplicable to the facts of this case. Specifically, Defendant quoted this Court's opinion in *State v. Morales*, 2005-NMCA-027, ¶ 11, 137 N.M. 73, 107 P.3d 513, that the community caretaker exception applies only "if an officer has a 'reasonable and articulable belief, tested objectively, that a person is in need of immediate aid or assistance or protection from serious harm.' " (citation omitted).

{5}     In response, the State acknowledged that the community caretaker exception requires that an officer "be able to articulate why he was there," but asserted that "until and unless an officer approaches people to ask that first question, they're really not going to know whether the person is in need of care." The State also conceded that "in this case, [the deputies] approached the vehicle they had no reason to believe anything was wrong other than [the vehicle was] in the park [and] that they believed [it] shouldn't have been there at that time of night." Thus, the State's argument before the district court was that the deputies' actions were justified, even without a reasonable suspicion of criminal activity, so long as those actions were eventually directed at determining whether Defendant was in need of assistance. As explained by the State:

> the police are entitled to approach a vehicle and ask, "everything ok?" That's what the community caretaker doctrine is all about. It's not always readily available to an officer to know what's going on with people until they approach them and say "how are you doing? how's everything going?" And that's exactly what happened here.

4

{6}     The district court rejected that argument. In doing so, the court specifically noted that Deputy Gutierrez's testimony did not articulate any reason to believe that anyone was in need of assistance. The court noted that the deputies were concerned about "a potential ordinance that nobody should be in the park" and concluded that their actions were investigatory in nature and "that seemed to be more the concern than an actual articulable concern for the safety of what was going on." In granting Defendant's motion to suppress evidence, the court explained that the community caretaker doctrine is not satisfied by merely establishing that "somebody [was] parked in their vehicle, without articulating some kind of a need to check [on their safety]."

{7}     On appeal, the State now claims that the district court erred by holding that sheriff's deputies must have reasonable suspicion of criminal activity before approaching a parked car and asking the occupants to roll down a window. In doing so, the State frames the issue on appeal as being "whether Defendant was seized by the officer approaching his vehicle and asking him to roll down his window." In response, Defendant points out that the State is not arguing, "as it did below, that the deputies were engaged in community caretaking." Having reviewed the record below and the briefing here, we agree that the State has abandoned its previously asserted community caretaker theory of this case, and is instead asserting a new theory, which was not presented to the district court. That new theory asks this Court to determine that Defendant's interaction with Deputy Gutierrez did not rise above the level of a

consensual encounter until after Deputy Gutierrez smelled marijuana. Because the district court was not asked to rule upon that question, we decline the State's invitation to find that the district court erred in suppressing the evidence at issue.

**STANDARD OF REVIEW**

{8}	Except for matters involving fundamental or jurisdictional error, this Court does not consider appellate issues unless the record demonstrates that the appellant "fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *State v. Ortiz,* 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 (quoting *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717); *see also* Rule 12-216(A) NMRA (requiring that "[t]o preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked"). Thus, in order to preserve an issue for review in this Court, a party must "apprise[] the district court specifically of the nature of the claimed error and invoke[] an intelligent ruling thereon." *State v. Garcia*, 2013-NMCA-064, ¶ 37, 302 P.3d 111.

{9}	New Mexico courts have long held that:

> [t]he purpose of an objection or motion is to invoke a ruling of the court upon a question or issue, and it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the [district] court to the claimed error or errors, and that a ruling thereon then be invoked.

*State v. Lopez*, 1973-NMSC-041, ¶ 23, 84 N.M. 805, 508 P.2d 1292. In addition to allowing the district court to avoid or correct error before an appeal to this Court

6

becomes necessary, the preservation requirement "provides the opposing party a fair opportunity to show why the court should rule in its favor, and it creates a record from which this Court may make informed decisions." *State v. Joanna V.*, 2003-NMCA-100, ¶ 7, 134 N.M. 232, 75 P.3d 832. It is with an eye toward serving these basic purposes that we apply the preservation requirement. *State v. Montoya*, 2005-NMCA-005, ¶ 7, 136 N.M. 674, 104 P.3d 540.

**DISCUSSION**

{10}    On appeal, the State directs this Court to our recent opinion in *State v. Murry*, 2014-NMCA-021, ¶ 4, 318 P.3d 180, which also involved law enforcement officers approaching a parked car on foot. Before reaching the car, however, one officer saw the person in the driver's seat make an abrupt movement that caused him concern. *Id.* At that point, the officer addressed the driver, saying "either, 'S[ir], open the door,' or 'Hey, man, open the door.'" *Id.* ¶ 16.

{11}    The outcome in *Murry* turned upon whether those words commanded the driver's compliance, or were merely a request, since "[t]he point at which seizure occurs is pivotal because it determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *Id.* ¶ 11 (quoting *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30). Although the State consistently "characterized the statements, 'S[ir], open the door,' or 'Hey, man, open the door,' as 'requests,' or as the officer 'asking' the driver to open his door," *id.* ¶ 17,

7

we disagreed, finding no reason to interpret the officer's "plain, unequivocal language as a 'request' and not as an order from a uniformed police officer." *Id.* ¶ 19. Ultimately, our determination that the officer was ordering the driver to open his door was "based on the actual language [the officer] used and not on counsel's characterization" of that language. *Id.*

{12}    In this case, we do not know the actual language Deputy Gutierrez used to ask, request, or order that Defendant roll down his window; instead, the record merely contains his testimony that when he arrived at the passenger's side of the car, he could not see who was inside because the windows were tinted, "so [he] knocked on the window and asked the driver–or the passenger–to roll down the window." Thus, rather than the actual language used, the record contains only Deputy Gutierrez's own characterization of those unknown words: he says that he, like the police officer in *Murry*, was "asking" that the window be rolled down.

{13}    Of course, this Court did not agree with that characterization in *Murry*, and the importance of the words "Sir, open the door," or "Hey, man, open the door" in resolving that case was clear. It is, therefore, noteworthy that the State, which now argues that this case should be decided on the same basis as *Murry*, did not offer into evidence the words used by Deputy Gutierrez at that pivotal moment. And it is perhaps even more telling that the State's present argument is that *Murry* is distinguishable, since–unlike the present case–the officer in *Murry* exercised

8

command of the situation in a way that was "at odds with any notion that a passenger would feel free to leave." 2014-NMCA-021, ¶ 27 (internal quotation marks and citation omitted). But without knowing what Deputy Gutierrez said as he knocked on the window, we can neither assess the extent to which he exercised command of the situation nor say whether Defendant would have felt "free to leave" under the circumstances. Or, to put it another way, the one fact that could distinguish this case from *Murry* was never offered for the district court's consideration and—as a result—also does not appear in the record for this Court to review.

{14}     Instead of offering that evidence or asserting that theory, the State consistently argued below that no reasonable suspicion of criminal activity was necessary because the deputies were engaged in community caretaking. The district court disagreed, noting that the deputies' conduct appeared to be investigatory and finding that Deputy Gutierrez had failed to articulate any reason to believe that anyone was in need of assistance.

{15}     As this Court has explained under similar circumstances:

> while the State may have a number of different theories as to why the evidence should not be suppressed, in order to preserve its arguments for appeal, the State must have alerted the district court as to which theories it was relying on in support of its argument in order to allow the district court to make a ruling thereon.

*State v. Janzen*, 2007-NMCA-134, ¶ 11, 142 N.M. 638, 168 P.3d 768. In this case, the State did not do so. Rather than invoke a ruling from the district court regarding

9

whether or not Defendant was seized prior to rolling down the window of the car in which he was seated, the State invoked a ruling on whether the deputies were engaged in community caretaking. That was the issue upon which the district court based its decision at the motion hearing.

{16}     On appeal, the State is not asserting that the district court erred in its application or analysis of the community caretaking doctrine. We decline the State's invitation to reverse the district court on a basis not presented below and therefore not preserved for our review. The district court's order granting Defendant's motion to suppress evidence is affirmed.

{17}     **IT IS SO ORDERED.**


_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**LINDA M. VANZI, Judge**